**Sasarak v. Sasarak**
*[Cite as 3 AOA 210]*

*Case No. 57065*
*Cuyahoga County, (8th)*
*Decided May 31, 1990*

*James M. Dubelko, Gareau & Dubelko Co., L.P.A., 23823 Lorain Road, Suite 200, North Olmsted, Ohio 44070, for Plaintiff-Appellant.*

*Dennis Kaselak, Monroe, Zucco & Kaselak, 1525 Leader Building, Cleveland, Ohio 44114-1444, for Dependant-Appellee.*

KRUPANSKY, P.J.

Lillian and Michael Sasarak were married on April 25, 1981 in Cuyahoga County and remained wed until Michael's death July 28, 1987. Four days prior to the marriage, on April 21, 1987, both parties entered into an antenuptial agreement. The agreement provided: (1) each party would retain the separate property each owned before marriage; (2) neither party would participate in the other's estate upon death; and (3) living expenses would be shared equally.[1]

On February 11, 1988, plaintiff Lillian Sasarak filed a complaint in the Cuyahoga County Probate Court, case number 1015917, to set aside the antenuptial agreement, naming as defendant the executor of her decedent husband's estate and sole beneficiary, his son, Michael Sasarak. A hearing[2] was held on September 19, 1988, after which a referee filed his Report and Recommendation October 25, 1988, upholding the validity of the antenuptial agreement. Plaintiff filed objections to the referee's report in writing November 9, 1988. Thereafter, on December 14, 1988, the trial court journalized an entry overruling plaintiff's objections to the referee's report from which plaintiff filed a timely notice of appeal assigning four errors.

Plaintiff's first three assigned errors follow:

"I. THE TRIAL COURT ERRED IN ENTERING JUDGMENT AGAINST PLAINTIFF-APPELLANT ON HER COMPLAINT, ADOPTING IN FULL THE REPORT OF ITS REFEREE, OVER THE SPECIFIC OBJECTION OF PLAINTIFF, WHERE NO FINDING WAS MADE AS TO WHETHER THE ANTENUPTIAL AGREEMENT BETWEEN PLAINTIFF AND DECEDENT HUSBAND PROVIDED FOR PLAINTIFF TO RECEIVE AN AMOUNT FROM THE ESTATE OF HER HUSBAND, UPON HER HUSBAND'S DEATH, WHICH WAS WHOLLY DISPROPORTIONATE IN VALUE TO THE AMOUNT SHE WOULD HAVE BEEN ENTITLED TO TAKE UNDER THE LAW.

"II. TRIAL COURT ERRED IN ENTERING JUDGMENT AGAINST PLAINTIFF-APPELLANT ON HER COMPLAINT, ADOPTING IN FULL THE REPORT OF ITS REFEREE, OVER THE SPECIFIC OBJECTION OF PLAINTIFF, WHERE NO FINDING WAS MADE AS TO WHETHER, PRIOR TO ENTERING INTO THE ANTENUPTIAL AGREEMENT WITH PLAINTIFF, DECEDENT HUSBAND HAD MADE A FULL AND FAIR DISCLOSURE TO HER OF HIS ASSETS, OR THAT, IN THE ABSENCE OF SUCH A DISCLOSURE, PLAINTIFF HAD KNOWLEDGE OF THE NATURE, EXTENT AND VALUE OF HER HUSBAND'S ASSETS.

"III. THE TRIAL COURT ERRED IN ENTERING JUDGMENT AGAINST PLAINTIFF-APPELLANT ON HER COMPLAINT, ADOPTING IN FULL THE REPORT OF ITS REFEREE, OVER THE SPECIFIC OBJECTION OF PLAINTIFF, WHERE NO CONCLUSION OF LAW WAS MADE AS TO WHETHER DECEDENT HAD MET ITS BURDEN OF PROVING THAT THE DECEDENT HUSBAND HAD MADE FULL AND ADEQUATE DISCLOSURE OF THE NATURE, EXTENT, AND VALUE OF HIS ASSETS TO PLAINTIFF, PRIOR TO THE TIME THAT PLAINTIFF SIGNED THE ANTENUPTIAL AGREEMENT, OR THAT PLAINTIFF OTHERWISE HAD KNOWLEDGE OF THE NATURE, EXTENT, AND VALUE OF THE DECEDENT'S ASSETS BEFORE SHE SIGNED THE AGREEMENT."

Plaintiff's first three assignments of error lack merit.

Plaintiff argues in essence the trial court erred by adopting the referee's report (1) because no finding was made as to the disproportionate

amount plaintiff took under the agreement when at law she would be entitled to one-half, and (2) no finding of fact and conclusion of law was made that a full and fair disclosure of Michael's assets was presented to plaintiff prior to the marriage so she could voluntarily assent.

Plaintiff's argument is unpersuasive.

An antenuptial agreement is a contract entered into between a man and woman in contemplation of their future marriage. *Gross* v. *Gross* (1984), 11 Ohio St. 3d 99, 102. These agreements often include provisions for disposition of property both real and personal and maintenance of one spouse upon death or divorce of the other. *Id.*

Ohio has for over one hundred forty years recognized the validity of antenuptial agreements when the *death* of a spouse is involved. See *Stilley* v. *Folger* (1846), 14 Ohio 610.

Often parties to antenuptial agreements have previously been married, have children from the prior marriage, and desire to distribute their individual property to their respective children. *Gross, supra,* at fn. 3, 103. Recent case law upholds the validity of antenuptial agreements upon the death of a spouse even though the residual estate left to the surviving spouse under the antenuptial agreement is disproportionate to the amount she would have received pursuant to her statutory rights as a surviving spouse. *Gross, supra,* at 103; *Hook* v. *Hook* (1982), 69 Ohio St. 2d 234; *Troha* v. *Sneller* (1959), 169 Ohio St. 397; *Juhasz* v. *Juhasz* (1938), 134 Ohio St. 257.

An antenuptial agreement, however, must meet certain minimum standards of good faith and fair dealing; if fair and reasonable, it will be enforced. *Gross, supra,* at 99; *Hook, supra.* The spouse must be fully and accurately apprised of the nature, value and extent of the property affected by the agreement or that she have full knowledge prior to her voluntarily signing the agreement. *Hook, supra,* at 236; *Juhasz, supra.*

Plaintiff argues the referee failed to enter a finding of fact or conclusion of law in his report to the trial judge on the following questions: (1) disproportionate value and (2) full and fair disclosure of the assets.

Pursuant to Civ. R. 53 and in accord with same, the referee provided extensive findings of fact sufficient to allow the trial court to make an independent analysis of the issues and apply appropriate rules of law. Civ. R. 53(E)(5)(6). *Garcia* v. *Tillack* (1983), 9 Ohio App. 3d 222, citing *Normandy Place Assoc.* v. *Beyer* (1982), 2 Ohio St. 3d 102; *Nolte* v. *Nolte* (1978), 60 Ohio App. 2d 227.

The referee set forth the factors in *Juhasz, supra,* and applied to these factors the facts, testimony and documentary evidence submitted by the parties. The referee's report set forth the factors to consider as stated in *Juhasz* as follows:

"1. An agreement to marry gives rise to a confidential relationship between the contracting parties.

"2. An Antenuptial contract voluntarily entered into during the period of engagement is valid when the provision for the wife is fair and reasonable under all the surrounding facts and circumstances.

"3. When the amount provided for the wife in an Antenuptial contract entered during the existence of the confidential relationship arising from a engagement is wholly disproportionate to the property of the prospective husband in the light of all surrounding circumstances and to the amount she would take under the law, the burden is on those claiming the validity of the contract to show that before it was entered into he made full disclosure to her of the nature, extent and value of his property or that she then had full knowledge thereof without such disclosure.

"4. Although the provision made for the intended wife in an Antenuptial contract is *wholly disproportionate, she will be bound by voluntary entry* into the contract after *full disclosure* or with *full knowledge.*" (Emphasis added.)

The referee concluded:

"In applying the *Juhasz* test to the instant facts it is clear that the parties were in a confidential relationship. It is also clear that Mrs. Sasarak voluntarily entered into the agreement. Based on the fact that Mrs. Sasarak was able to understand real estate purchase agreements, it is unbelievable that she was not able to understand this Antenuptial agreement.

" The third factor of the *Juhasz* test involves full disclosure by each party of his or her property. The Ohio Supreme Court expounded this factor in the case of *Hook* v. *Hook* (1982), 69 Ohio St. 2d 234. In *Hook,* the Court held that the parties must demonstrate an adequate disclosure of property. There is no need for the agreement to itemize various assets and their exact worth. 'In the instant case, *Mrs. Sasarak testified* that the *two exhibits attached to the Antenuptial agreement were accurate with regard to the assets she owned and were accurate with regard to her husband's assets.*[3] *There was no evidence present-*

*ed which would indicate that adequate disclosure was not provided by each party.* (Emphasis added.)

"Due to the fact that Mrs. Sasarak voluntarily entered the agreement and full disclosure was made, the fourth factor of the *Juhasz* test is met."

Under the rule espoused in *Juhasz*, the contract is *not* invalidated merely because the spouse's share taken is small or disproportionate. *Juhasz, supra* at 264, 265. Rather, after the intended spouse is fully informed of the property holdings of the other party and is satisfied with the terms, if the spouse then agrees and voluntarily signs, the *spouse is bound. Id.*

The referee made and entered into the report a finding that a full disclosure of decedent's assets was made to plaintiff and she voluntarily entered and signed the antenuptial agreement.[4]

Accordingly, plaintiff's first three assignments of error are not well taken and overruled.

Plaintiff's fourth assignment of error follows:

"IV. THE TRIAL COURT, IN ADOPTING IN FULL THE REPORT OF ITS REFEREE, MISCONSTRUED AND MISAPPLIED THE OHIO SUPREME COURT'S *HOOK* V. *HOOK* DECISION, AND ACCORDINGLY ERRED IN ENTERING JUDGMENT ON THE FACTS FOUND BY THE REFEREE IN FAVOR OF THE DEFENDANT. THE REFEREE BELOW, IN HIS REPORT, AND THE TRIAL COURT IN FULLY ADOPTING THE REFEREE'S REPORT, LIKENED THIS CASE TO THE FACTS PRESENTED IN THE *HOOK* DECISION, IN DENYING APPELLANT THE RELIEF SHE REQUESTED IN HER COMPLAINT. (REPORT, AT 5-6)." Plaintiff's fourth assignment of error lacks merit.

The facts in *Hook, supra,* were clearly similar to the case *sub judice*. In *Hook,* the husband stated his assets to be "* * * in excess of sixty thousand ($60,000) dollars, at the date hereof * * *"; the actual total was $86,652.53. This was held to satisfy the full disclosure requirement since there was no evidence the wife had been misled as to the extent of her husband's property *even though* she would take a disproportionate share under the agreement than she would at law. *Hook, supra.*

The referee cited extensive testimony of plaintiff upon which he relied at the hearing below to arrive at the conclusion that plaintiff was an independent individual, an avid reader, well read and competent who voluntarily signed

the antenuptial agreement which disclosed the assets each brought to the marriage.[5]

In addition, the referee's factual findings indicated and included a notarized agreement made on July 11, 1987. This agreement was entered into by Lillian and the younger Michael Sasarak, who held a durable power of attorney for his father[6]. The agreement was entered into for the distribution of assets from the sale of the Palm Drive property located in North Olmsted; the net proceeds to be distributed on the basis of 50% to plaintiff and 50% to decedent's son Michael J. Sasarak. The plain language of the agreement follows: "Whereas Lillian and Michael entered into a *Prenuptial Agreement*[7] on April 21, 1981 * * *;" thus, indicating a continuing course of conduct, over six years after the initial agreement, which in essence ratified the initial antenuptial contract.

The referee included relevant facts and witnesses' testimony at the hearing upon which the trial court could make an informed independent determination that plaintiff voluntarily entered the antenuptial agreement with full disclosure of decedent's assets.

Accordingly, the trial court did not err in adopting the referee's finding that the antenuptial agreement at issue was valid and binding upon the plaintiff.

*Judgment affirmed.*

CORRIGAN, J., and CORRIGAN, J., concur.

---

[1] The written antenuptial agreement embodied these terms in sections one through eight.

The plain language of the witnessed agreement also provided in capital letters on the *signature* page: "Waiver of right to dower in the property of the other and to any other matter whatever that may become the subject of controversy between the parties." Agreement, pg. 5.

[2] No transcript of the hearing was taken.

[3] Attached to the antenuptial agreement was a list of each party's assets signed by each party and each was dated April 26, 1981, the day after the wedding. Mike's list, "Exhibit A", contained, *viz,* (1) residence 14744 Fayette Blvd., Brook Park, Ohio (value $50,000 in the process of being sold), (2) cash and/or equivalent $78,000, and (3) 1979 Mercury Zephyer [sic] automobile $3,000.

[4] The court *sub judice* undertakes no review of the weight of the evidence presented at hearing since plaintiff has not supplied a transcript or an App. R. 9(C) narrative statement. Therefore, this court presumes regularity of the trial court's affirmance and order. *Knapp* v. *Edwards Laboratories* (1980), 61 Ohio St. 2d 197, 199.

[5] The referee found a real estate agent testified plaintiff directed the sale of her home on two occasions without

relying on the advice of her husband. Furthermore, Mrs. Sasarak testified she never sought the advice of an attorney for the sales. The referee further found, "As an avid reader it is incredible that she would not have read the Antenuptial Agreement."

[6] The elder Michael Sasrak had apparently suffered a stroke before this agreement was signed.

[7] The term antenuptial agreement and prenuptial agreement are used synonymously.