Plaintiff-appellant, Barbara A. Wiethe, appeals a Warren County Court of Common Pleas decision granting summary judgment in favor of defendants-appellees, Jeffrey C. Beaty and LaDonna B. Leach, ("Executors") executors of the Estate of Charles Edward Beaty ("Beaty"). We affirm.
On May 11, 1990, appellant and Charles Edward Beaty entered into a Prenuptial Agreement ("Agreement"). The Agreement was to last for ten years at which time the parties' assets would merge. The Agreement disclosed the assets in approximate sum values of $2,056,388.37 for Beaty and $441,000 for appellant. On May 25, 1990, an addendum was added to the Agreement requiring Beaty to take a life insurance policy for $100,000 designating appellant as the beneficiary.
Appellant and Beaty were married on May 29, 1990. On September 25, 1995, Beaty died. On January 31, 1996, appellant filed a complaint to set aside the Agreement. By judgment entry filed on April 3, 1998, the trial court granted summary judgment in favor of the Executors.
Appellant filed a timely appeal and asserts one assignment of error:
 IT IS PREJUDICIAL ERROR BY THE TRIAL COURT TO GRANT DEFENDANT'S [SIC] MOTION FOR SUMMARY JUDGMENT.
In her one assignment of error, appellant argues that the Agreement is invalid. In support of her position, appellant makes three arguments: (1) the Executors failed to demonstrate that Beaty made full disclosure of his assets, (2) appellant adequately demonstrated that the Agreement is overreaching, and (3) the trial court erroneously decided issues of fact. We disagree.
Civ.R. 56(C) permits the trial court to grant summary judgment where there is no genuine issue as to any material fact. Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344,346. Summary judgment will be granted as a matter of law if reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made. Id.
In deciding whether there is a genuine issue of material fact, the evidence must be construed in the nonmoving party's favor. Hannah v. Dayton Power Light Company (1998), 82 Ohio St.3d 482,485. In reviewing the moving party's motion, a trial court should award summary judgment with caution. Welco,67 Ohio St. 3d at 346. Nevertheless, summary judgment is appropriate where a plaintiff fails to produce evidence supporting the essential elements of her claim. Id. An appellate court must independently review the record to determine if summary judgment was appropriate. Therefore, an appellate court affords no deference to the trial court's decision. Fitzgerald v. Masland-Hayashiy, Inc. (Dec. 15, 1997), Warren App. No. CA97-05-042, unreported, at 6-7, citingSchwartz v. Bank One, Portsmouth, N.A. (1992), 84 Ohio App.3d 806.
A prenuptial agreement determines the distribution of assets and is entered into so that the assets owned by each party remain theirs when the marriage terminates. Fletcher v.Fletcher (1994), 68 Ohio St.3d 464, 466. In exchange, the surviving spouse agrees not to assert claims against the decedent spouse's estate. Like any contract, it must meet a minimum standard of good faith and fair dealing to be enforceable. Hook v. Hook (1952), 69 Ohio St.2d 234, 235. However, most prenuptial agreements will yield a disproportionate share to the surviving spouse.[1] See Fletcher,68 Ohio St.3d 464. However, a prenuptial agreement that is freely and voluntarily entered into will not be invalid because it makes a disproportionate distribution. Fletcher, 68 Ohio St.3d 464,466, citing Juhasz v. Juhasz (1938), 134 Ohio St. 257, paragraph one of the syllabus.
Determining whether a prenuptial agreement was entered into voluntarily is measured by three factors:[2] (1) whether there was full disclosure or full knowledge of the nature, value, and extent of the prospective spouse's assets; (2) whether it was entered into without fraud, duress, coercion or overreaching; and (3) whether it promotes divorce or profiteering by divorce.[3]Fletcher, 68 Ohio St.3d at 467; Gross v. Gross (1984), 11 Ohio St.3d 99, paragraph two of the syllabus.
The party claiming the validity of a prenuptial agreement bears the burden to show that there was full disclosure or full knowledge of the assets. Hook, 69 Ohio St.2d at 235. Whether there is full disclosure or knowledge is based on the totality of the circumstances. Juhasz, 134 Ohio St. at paragraph three of the syllabus. Factors such as the amount of time the surviving spouse spent with the decedent, and how much she was familiar with his family relationships, employment, and financial dealings can adequately determine whether there was adequate disclosure. Stewart v. Harney (Mar. 7, 1988), Warren App. No. CA87-80-060, unreported, at 5.
Once that burden is met, the burden shifts to the party attacking the prenuptial agreement to show that the agreement was entered into fraudulently, under duress or coercion, or is over-reaching. Fletcher, 68 Ohio St.3d at 467, citing Gross, 11 Ohio St. 3d at paragraph two of the syllabus. "Overreaching" is defined as one party outwitting or cheating the other "by artifice or cunning, or by exploiting a significant disparity in understanding the nature of the transaction." Id.
Appellant asserts that Beaty failed to disclose his assets in two ways: (1) Beaty overestimated his assets in the Agreement; and (2) Beaty failed to disclose other assets. Appellant argues that if these facts were disclosed to her, she would not have signed the agreement or married Beaty.
In paragraph seven of the Agreement, it states:
 7. Each party hereto has made a full and complete disclosure to the other of his and her assets and of all factors bearing on this agreement. It is understood by both parties that the values placed upon the assets are honest and fair approximations of their fair market values and are intended to be a complete disclosure by each to the other. Any change in those values, after the date of execution of this agreement shall be due to factors beyond the control of ED [Beaty] and BARBARA [appellant].
The plain language of the Agreement required approximate values; it did not require either party to list absolute and exact values of the assets. See Hook, 69 Ohio St.2d at 238. We find that the Agreement adequately disclosed Beatty's assets.
The purpose of disclosing the value of Beaty's assets in the Agreement was to inform appellant of the approximate amount she would relinquish under Ohio's intestacy law in the event the marriage terminated before May 2000. In construing the facts in a light most favorable to appellant, we fail to see how Beaty's overestimation fraudulently induced her to sign the Agreement. Appellant signed the Agreement agreeing to forfeit one-third of $2,056,338.37. Her argument that she would not have signed the Agreement if the true values, which are lower, were revealed is illogical and without merit.
Next, appellant argues that there were several assets that Beaty owned which he intentionally failed to disclose in the Agreement. Appellant argues that if she was informed that Beaty's estate was worth substantially more than the Agreement reflected, she would not have agreed to forfeit her surviving spousal share.
The record reflects that appellant and Beaty dated for over ten years before they were married. During that time, appellant was involved in Beaty's financial dealings, actively participated in purchasing and financially securing property, considered herself a "partner" in Beaty's financial business dealings, and performed legal services for Beaty. Further, appellant admits that she was aware of Beaty's business activities and real estate holdings before the Agreement. These facts demonstrate that appellant had knowledge of Beaty's assets.
In addition, appellant points to specific assets that were fraudulently withheld from the Agreement. These include an IRA certificate of deposit; BC Demolition; Ruthie B., Inc.; Beaty Auction; Beaty Enterprises, Inc.; and Beaty Salvage.
First, appellant admits in her deposition that prior to the Agreement she incorporated Ruthie B., Inc., and did extensive legal work for BC Demolition. She further stated that prior to signing the Agreement, appellant asked Beaty why Beaty Auction was not listed. Beaty informed her that his intention was to get out of the auction business. Appellant was apparently satisfied as to why Beaty Auction was not listed on the Agreement.
Second, there is evidence from Charles H. Jones, the attorney who incorporated Beaty Enterprises, that Beaty was issued fifty shares at the time of incorporation. The ledger book shows that Beaty transferred those shares to his father, Lonzy Beaty, prior to the Agreement. Upon Lonzy Beaty's death, all his shares were transferred into a trust naming Beaty as the trustee. The stock certificate issued to Beaty acknowledged Beaty as the trustee.
Finally, the IRA certificate at the time of the Agreement was valued at $2,000 to $5,000. Beaty Salvage is a copper and steel scrap yard. The Executors assert that Beaty Salvage was of little value in 1990. Appellant has failed to demonstrate its value. Considering the substantial worth of Charles Edward Beaty that appellant acknowledged when she signed the Agreement, we find that no reasonable mind would find that an IRA certificate worth $5,000 or Beaty Salvage, appearing to be worth an insignificant amount, would have a material impact on appellant's decision whether to sign the Agreement. Based on the foregoing, we find that appellant acquired full knowledge of Beaty's financial holdings before signing the Agreement.
In her second argument, appellant argues that the Agreement is overreaching. In support of her argument, appellant asserts that she was unrepresented by counsel, had only two days to sign the Agreement, and only had twenty minutes to review Beaty's assets listed in the Agreement. Further, appellant argues that the life insurance addendum was evidence of overreaching because it demonstrates Beaty's attempt to correct appellant's lack of representation.
The record reflects that at the time appellant signed the Agreement, she had been an attorney for over ten years, had extensive legal experience in contract law, and had been Beaty's financial and legal counsel in his financial affairs. As a result, appellant became familiar with Beaty's real estate holdings and financial worth. When appellant was presented with the Agreement and had it for two days, which provided her ample opportunity to seek the advice of counsel before signing.
Based on the foregoing and construing the facts in appellant's favor, we find that the Executors have shown that there is no evidence that Beaty outwitted, cheated, or exploited appellant as to the nature and extent of what the Agreement entailed. Therefore, appellant has not set forth any facts that the Agreement was over-reaching.
In her third argument, appellant argues in essence that the trial court weighed the evidence when it granted the Executors summary judgment. We find that our foregoing holding is dispositive of this argument. Construing the facts in the light most favorable to appellant, we find that reasonable minds could only conclude that appellant voluntarily entered into the Agreement, that Beaty made adequate disclosure of his assets, appellant failed to show fraud, coercion, or an overreaching agreement, and that the Agreement is fair and reasonable. Appellant's assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] A disproportionate share means that the surviving spouse is receiving substantially less of the decedent spouse's assets as compared to her elective share under Ohio's descent and distribution statute.
[2] Appellant has admitted in her deposition that she voluntarily entered into the Agreement. However, she claims that Beaty intentionally failed to disclose his assets.
[3] The third factor has no application in this case.