JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant/cross-appellee, Frank Cangemi ("Frank"), appeals from a judgment of the domestic relations court concerning the award of spousal support, division of property, and allocation of fees. Plaintiff-appellee/cross-appellant, Kathryn Pease Cangemi ("Kathryn"), appeals the trial court's decision concerning the award of spousal support and whether the antenuptial agreement concerning spousal support was conscionable. Finding some merit to the appeal, we affirm in part, modify in part, and remand for further proceedings. We find the cross-appeal moot.
 {¶ 2} Frank and Kathryn met in 1984 and resided together beginning in 1987. In 1991, Kathryn quit her job as a speech pathologist to stay home and care for her son and Frank's children, who were all from prior marriages. It is undisputed that since 1991 Frank provided the sole financial support to Kathryn and her son.
 {¶ 3} As early as February 1993, the parties began drafting an antenuptial agreement ("Agreement"). Frank and Kathryn had separate counsel advising them on the Agreement, and negotiations regarding the Agreement occurred over a three-year period. On December 23, 1996, one week prior to their marriage, the parties signed the Agreement. Pursuant to the disclosure statements attached to the Agreement, Frank's net worth was approximately $8,301,344 and Kathryn's net worth was $33,000.
 {¶ 4} After nearly three years of marriage, Kathryn filed for divorce and sought temporary spousal support. The court granted her temporary support of $4,000 per month. Following a full hearing on the issue of support, the court ordered Frank to pay Kathryn $6,000 per month as spousal support. Frank moved to set aside the order in December 2000, and the court denied his motion in June 2002. During this time, Frank was found in contempt of court for failing to completely satisfy the temporary support order.
 {¶ 5} In 2003, the parties stipulated that an arbitrator would hear and decide all matters pertaining to the parties' final divorce hearing. Following the hearing, the arbitrator issued his decision, which was adopted by the trial court as its order. Both parties appealed this decision. This court inCangemi v. Cangemi, Cuyahoga App. No. 84678, 2005-Ohio-772
("Cangemi I") vacated the trial court's decision and remanded the matter for further proceedings.
 {¶ 6} On remand, the parties stipulated that they would submit post-hearing briefs, including findings of fact and conclusions of law, rather than relitigating the matter. The parties also submitted proposed judgment entries. In June 2005, the trial court issued its final decree of divorce granting Kathryn's complaint for divorce and ordering Frank to pay $562,620.58 for the property division, as well as spousal support of $5,000 per month for 12 months. The court also found Frank in contempt for failing to pay Kathryn temporary spousal support and sentenced him to ten days in jail or forty hours of community service. Frank purged his contempt sentence by paying Kathryn $3,500 for attorney fees. The court also ordered Frank to pay an additional $15,000 toward Kathryn's attorney fees. The court further found that Frank was in arrears under the temporary support order in the amount of $63,984.44 and ordered that it be paid in monthly installments in addition to the post-decree spousal support ordered.
 {¶ 7} Frank appeals the trial court's decision, raising thirteen assignments of error, which will be addressed together where appropriate. Kathryn cross-appeals, raising one assignment of error.
 Standard of Review {¶ 8} When reviewing the propriety of a trial court's determination in a domestic relations case, an appellate court generally applies an abuse of discretion standard. Booth v.Booth (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. This same standard is used in reviewing orders relating to alimony and a division of marital property. Id., citing Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140 and Martinv. Martin (1988), 37 Ohio St.3d 292, 18 N.E.2d 1112. "Since it is axiomatic that a trial court must have discretion to do what is equitable upon the facts and circumstances of each case, it necessarily follows that a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment." (Citation omitted). Booth, supra.
 {¶ 9} It is well settled in Ohio that public policy allows the enforcement of prenuptial agreements. Gross v. Gross
(1984), 11 Ohio St.3d 99, 464 N.E.2d 500, paragraph one of the syllabus. "Such agreements are valid and enforceable (1) if they have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce." Id. at paragraph two of the syllabus. These conditions precedent to the enforcement of a prenuptial agreement arise in part from the fact that parties who have agreed to marry stand in a fiduciary relationship to each other. Id. at 108; Juhasz v. Juhasz
(1938), 134 Ohio St. 257, 16 N.E.2d 328, paragraph one of the syllabus. "A perfect or equal division of the marital property is not required to withstand scrutiny under this standard." Gross,
supra at 109. Moreover, a strict application of the law of contracts is not appropriate, rather, the terms of the agreement and the intent of the parties at the time of execution of the agreement is of prime importance. Id. at 107. In the instant case, the trial court found the Agreement valid and enforceable for both the division of property and spousal support.
 {¶ 10} With these principles in mind, we proceed to address the assignments of error.
 Spousal Support {¶ 11} In his first assignment of error, Frank argues that the trial court erred in ordering post-decree spousal support. In his second and third assignments of error, Frank argues that the trial court erred in failing to terminate temporary spousal support, and in holding him in contempt and ordering him to pay the arrearage in temporary support.
 {¶ 12} The parties' Agreement provides that Frank shall pay Kathryn alimony in the event that the marital relationship terminated.
"Alimony — The parties agree that Frank Shall pay to Kathyas alimony in the sum of Sixty Thousand Dollars ($60,000.00),payable in twelve (12) monthly installments of Five ThousandDollars ($5,000.00) each. Frank shall commence payments on thefirst day of the first month following the issuance of the finaldecree terminating the parties' marital relationship. * * * Theparties fully understand that there will not be any other alimonypaid in the event of termination of marriage except for thatwhich has been specifically agreed to and that the parties have,in negotiating this Agreement, already considered and/orcontemplated the fact that the court may or might take a `secondlook' at the Agreement in the event of divorce or dissolution ofthe marriage." Page 8, paragraph (5)(d).
 {¶ 13} Based on the plain and unambiguous language of the Agreement, Kathryn would be entitled to alimony in the amount of $5,000 per month for twelve months. Frank argues, however, that Kathryn already received an amount of spousal support in excess of the amount specified in the Agreement by virtue of the temporary support order. Therefore, he claims that no post-decree support should have been awarded and/or that he should receive a credit for any amounts paid in excess of the amount allowable under the Agreement.
 {¶ 14} R.C. 3105.18(B) allows a court to award either party reasonable temporary spousal support during the pendency of any divorce proceeding. Temporary spousal support need not be based on the factors in R.C. 3105.18(C), but only needs to be an amount that is "reasonable." R.C. 3105.18(B); Zeefe v. Zeefe (1998),125 Ohio App.3d 600, 709 N.E.2d 208. Reasonable support is the amount which an obligor has the ability to pay and which is sufficient to meet the obligee's present needs. Norton v.Norton (1924), 111 Ohio St. 262, 145 N.E. 253. The purpose of awarding temporary spousal support is to preserve the status quo during the divorce proceeding. Kahn v. Kahn (1987),42 Ohio App.3d 61, 68, 536 N.E.2d 678. Moreover, a trial court may award temporary support during the pendency of a divorce action pursuant to R.C. 3105.18 despite the existence of an antenuptial agreement to the contrary. Mulvey v. Mulvey (Dec. 4, 1996), Summit App. No. 17707, citing Fields v. Fields (Apr. 8, 1992), Summit App. No. 15235.
 {¶ 15} There is no set formula under R.C. 3105.18 to guide courts to arrive at an appropriate amount of temporary support.Gourash v. Gourash (Sept. 2, 1999), Cuyahoga App. Nos. 71882 and 73971. The only explicit limitation in R.C. 3105.18(B) is that the award must be "reasonable." Courts are given discretion in deciding what is reasonable support because that determination is dependent on the unique facts and circumstances of each case.Gourash, supra, citing Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 541 N.E.2d 597.
 {¶ 16} It is undisputed that Frank was Kathryn's sole source of financial support during their marriage. Therefore, absent the award of temporary support, Kathryn had no immediate means to support herself.
 {¶ 17} Moreover, under the terms of the Agreement, Kathryn was not entitled to any monetary support from Frank until the final divorce decree. Alimony did not commence until the "first day of the first month following the issuance" of the decree of divorce. The complaint for divorce was filed in October 1999. The divorce was not granted until June 2005. Based on the circumstances of the parties' relationship and the fact that Kathryn was unemployed during the marriage, we find the trial court's decision to award Kathryn temporary support during the pendency of the action was neither arbitrary nor unreasonable, even though the amount of temporary support exceeded the total amount of spousal support provided in the Agreement. Because we find that the award of temporary support was reasonable, we also conclude that the trial court acted within its discretion in holding Frank in contempt for failing to pay the temporary support.
 {¶ 18} Furthermore, we find that the trial court did not abuse its discretion in ordering Frank to pay post-decree spousal support. The Agreement clearly specifies that Kathryn is entitled to $60,000 in spousal support payable after the final decree of divorce. During oral argument, Frank's counsel asked this court to enforce the agreement as written. Although Kathryn was receiving temporary support, which was not contemplated in the Agreement, Frank's counsel conceded that the trial court had discretion to award temporary support. Pursuant to the Agreement, as written, Kathryn is entitled to a year of post-decree spousal support, following the final decree of divorce.
 {¶ 19} Therefore, we find that the trial court did not abuse its discretion in awarding Kathryn temporary spousal support during the pendency of the divorce proceedings, even though the amount exceeded the total amount of spousal support provided in the Agreement. We also find that the trial court acted within its discretion in holding Frank in contempt for his failure to pay the temporary spousal support as ordered. Finally, we find no abuse of discretion in the court's ordering Frank to pay post-decree support as provided in the Agreement.
 {¶ 20} Accordingly, we overrule the first, second, and third assignments of error.
 Termination Date of Marriage {¶ 21} In his fourth assignment of error, Frank argues that the trial court erred by using the date on which the parties were originally scheduled for trial as the termination date of the marriage for the purpose of property division.
 {¶ 22} In order to achieve an equitable division of marital property, the court must select a beginning and an ending date that defines the "duration of the marriage." R.C. 3105.171(A)(2) defines "during the marriage" to mean:
"(a)Except as provided in division (A)(2)(b) of this section,the period of time from the date of the marriage through the dateof the final hearing in an action for divorce or in an action forlegal separation; [or]
"(b) If the court determines that the use of either or both ofthe dates specified in division (A)(2)(a) of this section wouldbe inequitable, the court may select dates that it considersequitable in determining marital property. If the court selectsdates that it considers equitable in determining maritalproperty, `during the marriage' means the period of time betweenthose dates selected and specified by the court."
 {¶ 23} The decision to use the final hearing date as the valuation date or another alternative date pursuant to R.C.3105.171(A)(2)(a) and (b) is discretionary and will not be reversed on appeal absent an abuse of discretion." Schneider v.Schneider (1996), 110 Ohio App.3d 487, 493, 674 N.E.2d 769. A trial court may use a de facto termination date when such a date would be equitable. Berish v. Berish (1982), 69 Ohio St.2d 318,320, 432 N.E.2d 183. Otherwise, it is presumed the date of the final divorce hearing is the appropriate termination date of the marriage. Id.; Glick v. Glick (1999), 133 Ohio App.3d 821, 828,729 N.E.2d 1244.
 {¶ 24} Frank argues that the court abused its discretion in finding that the de facto termination date was October 2001, the date on which the case was originally set for trial. Instead, he argues that the court should have used October 1999, the date Kathryn filed her complaint for divorce.
 {¶ 25} Based on the circumstances of the case, we cannot say that the trial court's choice of October 2001 as the de facto termination date was arbitrary or unreasonable. Instead of using the final divorce hearing date of June 2005, the trial court compromised and used the original date of the final divorce hearing. Although Frank argues this date would yield an inequitable result, we find that the date used is neither unreasonable nor arbitrary.
 {¶ 26} Accordingly, we find no merit to Frank's fourth assignment of error.
 Attorney Fees {¶ 27} In his fifth assignment of error, Frank argues that the trial court abused its discretion in ordering him to pay a portion of Kathryn's attorney fees.
 {¶ 28} R.C. 3105.73(A) provides that a court may award reasonable attorney fees to either party if "the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."
 {¶ 29} In the instant case, the trial court ordered Frank to pay $15,000 toward Kathryn's attorney fees as additional temporary support arrearages. In so ordering, the court stated that it considered "the case law and statutory factors." The court found a "relevant factor" to be Frank's refusal to comply with the court's temporary support orders by failing to make any temporary support payments to Kathryn until a wage attachment was procured. The court specifically found that Frank's "failure to support his spouse was egregious and contumacious." These findings show that the trial court reasonably concluded that an award was equitable based on the circumstances of the case and on the disparity of incomes between the parties.
 {¶ 30} Therefore, we find that the trial court's award was neither arbitrary nor unreasonable. It was not an abuse of discretion to order Frank to pay $15,000 toward Kathryn's attorney fees.
 {¶ 31} Accordingly, Frank's fifth assignment of error is overruled.
 Rolling Brook Home {¶ 32} In his sixth assignment of error, Frank argues that the trial court abused its discretion in finding that Kathryn was entitled to 10 percent of the money borrowed to finance the construction of the Rolling Brook Trail home.
 {¶ 33} The Rolling Brook home was intended to be the parties' marital residence, although pursuant to the Agreement, it was not to be considered marital property. Any division or distribution of this property is made pursuant to the Agreement.
"Marital Home. Frank is in the process of building a newhome located at 7500 Rolling Brook, Solon, Ohio 44139, which willbe Frank and Kathy's primary marital residence. In that regard,Frank and Kathy have agreed as follows:
 "(a) From his separate property, Frank has provided and/orwill provide funds for the land and a portion of costs for theconstruction of the new home. Frank's separate propertyinvestment in the new home shall include (i) the cost that Frankpaid for acquiring the land as disclosed on the closing statement(ii) funds from the sale of Frank's home at 7642 Lindsey (sic)Lane, Solon, Ohio 44139, and (iii) any payments made directly byFrank or on his behalf to the general contractor, subcontractorsor third party vendors provided that such amounts are paid eitherbefore or within six months after occupancy. * * *
 "(b) In the event [of] the termination of the maritalrelationship of the parties by divorce, dissolution or any othermeans, Kathy shall first receive a sum equal to ten percent (10%)of Frank's separate property investment in the home ashereinabove defined. Frank shall then be reimbursed and shall beentitled to receive a credit for one hundred percent (100%) ofhis separate property investment as defined in subparagraph (a)and the parties shall then share equally the additional equity,if any, in the home, whether such increase or decrease occurs byappreciation or otherwise. * * * "
Agreement, Page 4-5, paragraph 3.
 {¶ 34} The Agreement unambiguously provides that Kathryn is entitled to receive 10 percent of Frank's separate property investment in the Rolling Brook home. This separate property includes the cost of the land acquired. The parties stipulated that the cost of the land was $179,900. Therefore, Kathryn is entitled to $17,900.
 {¶ 35} The separate property investment also includes any payments made by or for Frank to any general contractor, subcontractor, or third-party vendor related to the construction of the Rolling Brook home. Joint exhibit 1 and the subsequent stipulation by the parties provides that those payments, which were made between 1996 and 2001, totaled $4,503,307. Therefore, Kathryn is entitled to 10 percent of those payments, i.e. $453,307.
 {¶ 36} Frank argues that any funds he borrowed from National City Bank to finance the construction of the home should be deducted from the total amount invested unless Kathryn is assessed a portion of this debt for repayment. We disagree. The plain language of the Agreement provides that "any payments made directly by Frank or on his behalf" are considered "separate investment property." The Agreement does not expressly differentiate how Frank obtained the funds to make the payments, only that "any payments made" are to be included as separate investment property.
 {¶ 37} There is competent and credible evidence supporting the trial court's decision; therefore, we find that the court's decision awarding Kathryn 10 percent of the money borrowed to finance the construction of the marital home was neither arbitrary nor unreasonable.
 {¶ 38} Accordingly, the sixth assignment of error is overruled.
 Lindsay Lane Property {¶ 39} Frank argues in his seventh and eighth assignments of error that the trial court abused its discretion regarding the Lindsay Lane property. He claims that the court erred in failing to enforce the Agreement regarding the property, by finding it to be entirely marital property.
 {¶ 40} The trial court awarded Kathryn one-half of the equity in the Lindsay Lane property, thus deeming it marital property. The court made this award even though it found that Frank purchased the property prior to the marriage.
 {¶ 41} The Agreement provides:
"(a) `Separate Property' shall mean and include (i) allproperty owned by a party immediately before the marriage(including assets acquired by each of them in their separatenames while living together prior to marrying each other), * * *and (iv) the growth and/or appreciation in value during themarriage of such separate property. Except as may be otherwiseprovided herein, Separate Property shall exclude any SeparateProperty of either party which the parties have co-mingled duringtheir marriage. The Separate Property of each party is as setforth in Exhibits A and B attached hereto."
 {¶ 42} Marital property, pursuant to the Agreement, is any and all property acquired by the parties after marriage which is not defined as separate property. Marital property is to be divided equally.
 {¶ 43} Exhibit A of the Agreement clearly shows that Frank's personal residence, which was the Lindsay Lane property, was listed as his separate property. Therefore, it was an abuse of discretion for the trial court to find that the Lindsay Lane property was marital property subject to an equal distribution between the parties.
 {¶ 44} Instead, pursuant to the Agreement, Kathryn is entitled to receive only 10 percent of the funds from the sale of the Lindsay Lane property. Although the Lindsay Lane property was not sold at the time of the divorce proceedings, the parties agree that if it was sold in October 2001, the equity of the property would have been $102,000. Therefore, Kathryn is entitled to $10,200 for the Lindsay Lane property, pursuant to the Agreement.
 {¶ 45} Kathryn argues that she should also be entitled to one-half of the appreciation of the property and one-half of the reduction of the mortgage because it was paid down during the course of the marriage. Contrary to this assertion, the Agreement specifically includes as separate property the growth and appreciation in value of any separate property. Therefore, the appreciation or reduction in mortgage for the Lindsay Lane property remains Frank's separate property.
 {¶ 46} Therefore, we find that the trial court abused its discretion in awarding Kathryn $51,000 or one-half the equity in the Lindsay Lane property because the Agreement clearly provides that the Lindsay Lane property was Frank's separate property. However, pursuant to the Agreement, Kathryn is entitled to 10 percent of the net proceeds from the sale of the property. Therefore, Kathryn is entitled to $10,200.
 {¶ 47} Accordingly, we find some merit in Frank's seventh and eighth assignments of error.
 Marital Contributions to IRA {¶ 48} In his ninth assignment of error, Frank argues that the trial court's finding that he made a marital contribution to his retirement account was against the manifest weight of the evidence. He claims that his act of selling equities purchased with premarital funds held in his IRA, and purchasing mutual funds with the proceeds, does not constitute a marital contribution to his IRA when the resulting balance remained nearly the same.
 {¶ 49} The Agreement unambiguously provides that "retirement plan contributions made after the marriage" are marital assets subject to an equal division between the parties.
 {¶ 50} A review of the record reveals no abuse of the court's discretion in its finding that Frank contributed $30,000 to his Merrill Lynch IRA during the marriage. Frank testified that he made a contribution to the account and the financial statements from Merrill Lynch substantiate that testimony. Although Frank claimed that he simply transferred funds from one premarital IRA account to another, the evidence does not support that contention.
 {¶ 51} Therefore, we find that there was competent credible evidence to support the trial court's determination that Frank made a $30,000 contribution to his IRA. Pursuant to the Agreement, Kathryn is entitled to one-half of this contribution. The trial court did not abuse its discretion in awarding Kathryn $15,000 for the contribution made to Frank's Merrill Lynch IRA account.
 {¶ 52} Accordingly, Frank's ninth assignment of error is overruled.
 Vehicle Value {¶ 53} In his tenth assignment of error, Frank argues that the trial court's finding regarding the discrepancy in the values of the vehicles were against the manifest weight of the evidence.
 {¶ 54} Pursuant to the Agreement, Frank is to provide Kathryn "with a new vehicle comparable to that which she was driving at the time of the divorce or dissolution." Agreement, page 8, paragraph 5(c).
 {¶ 55} At the time of the divorce, Kathryn was driving a leased 1999 Ford Expedition, Eddie Bauer Edition. Frank purchased for Kathryn, in accordance with the Agreement, a 2002 Chevrolet Trail Blazer, which cost $27,891. Kathryn claimed that the vehicles were not comparable because a new Ford Expedition would have cost $41,995. The trial court agreed and found that Kathryn was entitled to an additional $14,104 because the vehicles were not comparable in price.
 {¶ 56} We cannot say that the trial court's decision is arbitrary or unreasonable. The Agreement is subject to interpretation regarding what exactly "a new vehicle comparable to that which she was driving at the time of the divorce or dissolution" means. Therefore, we will not disturb the trial court's decision absent any evidence that this decision was unreasonable or arbitrary. No such evidence was presented by Frank.
 {¶ 57} Therefore, we find that the trial court did not abuse its discretion in awarding Kathryn an additional $14,104 for the price discrepancy in the vehicles.
 {¶ 58} Accordingly, Frank's tenth assignment of error is overruled.
 Arbitrator Fees {¶ 59} In his eleventh assignment of error, Frank argues that the trial court abused its discretion in ordering him to pay 100 percent of the arbitrator's fees and costs.
 {¶ 60} The trial court's entry is devoid of any explicit order mandating that Frank pay the arbitrator's fees. Instead, the court's judgment entry provides: "[Kathryn] shall not be required to reimburse [Frank] for any payments made by [Frank] to John V. Heutsche pursuant to this court's order at Volume 4312, Pages 773, et seq." The court order to which the trial court referred is that which was initially appealed in Cangemi I. InCangemi I, this court vacated the trial court's entire order, including the provision regarding payment of arbitrator fees. Therefore, we find that the trial court erred in referencing a void order in its judgment entry.
 {¶ 61} Nevertheless, pursuant to R.C. 3105.73, the court has the discretion to award "litigation expenses to either party if the court finds the award equitable." Based on the record before us, we cannot say that ordering Frank to pay the arbitration expenses would be inequitable. The record clearly shows that the court considered Frank's economic status in awarding discretionary fees, including attorney fees. Having found the award of attorney fees to be equitable, we cannot say that the award of arbitrator's fees would be inequitable. Moreover, Frank has failed to make any compelling argument or cite any case law supporting his position that it would be inequitable for him to pay all the arbitrator's fees.
 {¶ 62} Therefore, we find that the trial court erred in referencing and incorporating a void order in its judgment entry. However, we find no abuse of discretion in the court's ordering Frank to pay the arbitration fees.
 {¶ 63} Accordingly, we overrule the eleventh assignment of error.
 Findings of Fact and Conclusions of Law {¶ 64} In his twelfth assignment of error, Frank argues that the trial court erred in denying his motion for findings of fact and conclusions of law.
 {¶ 65} Civ.R. 52 allows a party to request findings of fact and conclusions of law when a court enters a general judgment. InIn re Schoeppner (1976), 46 Ohio St.2d 21, 23, the Ohio Supreme Court found that a trial court's ruling which recited various facts and a legal conclusion satisfied the requirements of Civ.R. 52. The court concluded that the ruling, when considered together with other parts of the trial court record, formed an adequate basis upon which to decide the narrow legal issue presented. Id. See, also, Stone v. Davis (1981), 66 Ohio St.2d 74,419 N.E.2d 1094, (if the trial court's ruling or opinion, together with other parts of the trial record, provide an adequate basis upon which an appellate court can decide the legal issues presented, there is substantial compliance with Civ.R. 52).
 {¶ 66} Frank argues that the trial court did not provide adequate reasoning in its judgment entry regarding the award of spousal support and property division.
 {¶ 67} R.C. 3105.18 and R.C. 3105.171(F) do not require that the trial court address each factor in its judgment entry in considering an award of spousal support or division of assets, but only that it consider each factor. In dividing property in divorce proceedings, the trial court is required, however, to classify assets as marital or separate and then award each spouse his or her separate property. R.C. 3105.171(B) and (D).
 {¶ 68} We find that the court gave sufficient reasoning in its judgment entry regarding the award of spousal support to provide an adequate basis for appellate review. However, we find that the trial court made no findings of fact regarding the $6,056 distribution to Kathryn from Frank's "Merrill Lynch brokerage account." Nevertheless, we glean from the record and exhibits that Frank made a contribution during the marriage to his Merrill Lynch brokerage account in 1998/1999 in the amount of $12,112. Frank also testified that he made such contribution. Therefore, the contribution should be deemed marital property and Kathryn is entitled to one-half or $6,056.
 {¶ 69} We also find that the trial court did not make any conclusions regarding the retention of separate assets. Therefore, we remand the matter to the trial court for findings of fact and conclusions of law regarding the retention of the parties' separate assets.
 {¶ 70} Accordingly, Frank's twelfth assignment of error is sustained in part.
 Independent Review {¶ 71} In his final assignment of error, Frank claims that the trial court failed to conduct its own independent review of the matter. He argues that the trial court erred in adopting the arbitrator's decision without independent review. He further claims that the trial court's actions of adopting Kathryn's proposed judgment entry, without changes, reflects that the trial court did not independently review the matter.
 {¶ 72} On remand from this court's decision in Cangemi I,
the parties agreed that the court should decide the matter on the record before it, including the arbitration transcripts and exhibits, and the parties' submission of post-hearing briefs. The court also requested each party to submit a proposed judgment entry. Frank argues, and Kathryn has not disputed, that the trial court signed and adopted her proposed judgment entry.
 {¶ 73} A court may adopt verbatim a party's proposed findings of fact and conclusions of law as its own if it has thoroughly read the document to ensure that it is completely accurate in fact and law. Adkins v. Adkins (1998), 43 Ohio App.3d 95,539 N.E.2d 686, citing Paxton v. McGranahan (Oct. 31, 1985), Cuyahoga App. No. 49645 (A trial court may adopt proposed findings and conclusions verbatim pursuant to Civ.R. 52). See, also, State v. Jester, Cuyahoga App. No. 83520, 2004-Ohio-3611, citing State v. Combs (1994), 100 Ohio App.3d 90, 110,652 N.E.2d 205.
 {¶ 74} Although the trial court is obligated to conduct an independent analysis of the facts and conclusions contained in a recommended report, it is not obligated to modify the recommendation when it fully agrees with that decision. See, e.g., Witter v. Jarvis, Cuyahoga App. No. 84128,2004-Ohio-6628; Madama v. Madama (Sept. 3, 1998), Cuyahoga App. No. 73288. Absent a specific showing that reveals the trial court did not review the issues, we cannot say the trial court abused its discretion in reviewing the arbitrator's recommendation.Witter, supra.
 {¶ 75} Moreover, we find that the evidence shows that the trial court independently reviewed the matter, because the findings and conclusions contained in the trial court's judgment entry varied from that found in the arbitrator's recommendation. Frank has failed to prove that an independent review was not conducted. Therefore, we find no abuse of discretion in the court's reviewing the arbitrator's decision or adopting Kathryn's proposed judgment entry.
 {¶ 76} Accordingly, Frank's final assignment of error is overruled.
 Cross-Appeal {¶ 77} Kathryn argues in her sole assigned error that the trial court abused its discretion in not properly considering the conscionability of the spousal support provision of the Agreement. However, she "does not seek a reversal of the Judgment Entry of Divorce in this matter" but "merely seeks to preserve her objections on the issue of spousal support" in the event that this court sustains any of Frank's first three assignments of error. Because we overruled Frank's first three assignments of error, we need not address Kathryn's cross-appeal.
 {¶ 78} Accordingly, we find Kathryn's cross-appeal moot.
 Conclusion {¶ 79} In conclusion, we modify the trial court's judgment entry because we find that Kathryn is entitled to $10,200 as her distributive share of the Lindsay Lane property. However, we remand this matter for the limited purpose of the trial court's issuing findings and conclusions regarding the retention of the parties' separate assets as discussed in the twelfth assignment of error. All other aspects of the trial court's judgment are affirmed.
Affirmed in part, modified in part, and remanded for further proceedings consistent with this opinion.
It is ordered that the parties bear their own costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas Domestic Relations Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Diane Karpinski, J. and Christine T. McMonagle, J. concur.