DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, James Badger, appeals the judgment of the Medina County Court of Common Pleas, Domestic Relations Division. We affirm.
 I.
Mr. Badger and Frances Badger, appellee, were married on December 31, 1994. Prior to the marriage, on December 30, 1994, the couple signed an antenuptial agreement which was to control all issues of spousal support and the division of property. There were no children born as issue of the marriage, and, on July 7, 1998, Ms. Badger moved out of the marital residence. On April 21, 2000, Ms. Badger filed a complaint for divorce. Mr. Badger filed his answer and counterclaim on May 23, 2000. A hearing was held on March 14, 2001, and, on April 3, 2001, the trial court entered a divorce decree. In the decree, the trial court held that the antenuptial agreement was valid and controlled the division of property and the issue of spousal support. The court also held that Ms. Badger did not breach the antenupial agreement when she no longer contributed to the household expenditures as of the time she moved out of the marital residence. This appeal followed.
 II.
Mr. Badger asserts one assignment of error:
 The trial court committed error at law to the prejudice of the Defendant-Appellant by failing to grant a set-off against the money owed to the Plaintiff-Appellee.
Mr. Badger asserts that the trial court erred when it failed to grant him a setoff for the amount of money that he asserts Ms. Badger owes him for household expenditures under the antenuptial agreement. Specifically, Mr. Badger asserts that the antenuptial agreement required the couple to share household expenditures during the marriage and that, consequently, Ms. Badger owes him for these expenses from the time she moved out of the marital residence until the time when the divorce was granted. We disagree.
An "antenuptial agreement" is a contract entered into between a man and a woman in contemplation of their future marriage whereby the property rights and economic interests of the parties are determined and set forth. Rowland v. Rowland (1991), 74 Ohio App.3d 415, 419; Sasarak v.Sasarak (1990), 66 Ohio App.3d 744, 747. It is well settled law in Ohio that antenuptial agreements are enforceable so long as certain conditions are met. See Fletcher v. Fletcher (1994), 68 Ohio St.3d 464, 466; Kelmv. Kelm (1993), 68 Ohio St.3d 26, 28. We need not be concerned with whether those conditions were met in the present case inasmuch as both parties have agreed that the antenuptial agreement is valid and binding on them. Rather, this court must construe and apply the terms of that agreement to the facts and circumstances herein.
The Ohio Supreme Court has ruled that antenuptial agreements are contracts and that the law of contract will generally apply to their application and interpretation. See Fletcher, 68 Ohio St.3d at 467. This is a matter of law to be determined by the courts. See Davis v. LoopcoIndustries, Inc. (1993), 66 Ohio St.3d 64, 66; Latina v. Woodpath Dev.Co. (1991), 57 Ohio St.3d 212, 214. The trial court's resolution of a legal issue is reviewed de novo on appeal, without any deference afforded to the result that was reached below. See Graham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311, 313; Nationwide Mut. Fire Ins. Co. v. GumanBros. Farm (1995), 73 Ohio St.3d 107, 108.
A court should interpret a contract to carry out the intent of the parties as manifested by the language of the contract. Skivolocki v. EastOhio Gas Co. (1974), 38 Ohio St.2d 244, paragraph one of the syllabus. If the contract is unambiguous on its face, a court will not construe the contract's meaning contrary to its plain terms. Aultman Hosp. Assn. v.Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, syllabus. Additionally, when the contract's written language is a complete and accurate integration of the parties' contract, then the parol evidence rule precludes the introduction of evidence of conversations or declarations which occurred prior to or contemporaneous with the formation of the written contract and which attempt to vary or contradict the written terms of the contract. AmeriTrust Co. v. Murray (1984),20 Ohio App.3d 333, 335.
The first paragraph of the antenupial agreement expressly provides that the agreement "shall become effective and shall remain in effect irrespective of any change of residence or domicile by either or both of the parties." The sixth paragraph states that "[e]ach of the parties has sufficient property to provide adequately for his or her own care, maintenance and support, and it is contemplated that during marriage they will jointly contribute to provide for their expenses of care, maintenance and support."
In the case at bar, Mr. Badger asserts that the antenuptial agreement was a binding contract between the parties which required the couple to share household expenditures equally during the marriage. He asserts that Ms. Badger no longer contributed to the household expenses once she left the marital residence, and, therefore, she still owes him one-half of all expenses incurred from the time she moved out of the residence until the divorce was granted. Ms. Badger responds that the antenuptial agreement does not require the household expenditures to be divided as of the time she moved out of the couple's residence. She explains that, once she moved out of the residence, each person maintained their own household without contribution from the other spouse. When the trial court interpreted the antenuptial agreement, it held that the plain meaning of the contract language required the parties to jointly contribute to marital expenses. Ms. Badger, the court held, did not owe Mr. Badger any money for household expenses as the couple had followed the dictates of the antenuptial agreement by jointly contributing to the household expenses when they resided together and by each providing for his or her own expenses when living apart in separate households.
While the trial court's interpretation of the contract is reviewed denovo on appeal, this court agrees with the trial court's interpretation of the antenuptial agreement. Together, the plain meaning of the first and sixth paragraphs, is that, regardless of any change of residence, each person in the marriage must contribute to the couple's care, maintenance, and support expenses. There is no requirement that the expenses are shared equally, nor is there a requirement as to the specific amount each person must contribute. Rather, the plain meaning of the agreement is that neither person in the couple is solely responsible for all of the couple's expenses. The parties fulfilled their contractual obligations by each person contributing to the joint household expenses when they resided together and each providing for his or her own household expenses when residing apart.
 III.
This court takes note of a plain mathematical error in the trial court's division of the couple's joint bank account. The trial court noted that, as of the time Ms. Badger left the marital residence, the account had a balance of $6,300. Both parties agreed that Ms. Badger then took $1,000 from the account. The trial court ruled that the joint account should be divided equally and split the remaining balance of $5,300 among the parties, awarding Ms. Badger $2,650. This court holds that, as the account was to be split equally, the correct amount for the division should have been $6,300, not $5,300, with Ms. Badger receiving $1,000 credit for the amount she had already received. This results in Ms. Badger receiving $2,150 rather than $2,650. Accordingly, the amount Ms. Badger receives from the joint marital account is modified from $2,650 to $2,150. App.R. 12(A)(1)(a) and (B).
 IV.
Mr. Badger's assignment of error is overruled. The judgment is modified as to the division of the couple's joint bank account. We affirm the judgment of the Medina County Court of Common Pleas, Domestic Relations Division, as modified.
Judgment accordingly.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BAIRD, J.
SLABY, J. CONCUR