OPINION
{¶ 1} Jan Marie Vlad, appellant, appeals from a judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, awarding her spousal support and dividing marital property. Appellee, Randall George Vlad, cross-appeals from the same judgment.
 {¶ 2} On September 13, 2001, appellant filed her complaint for divorce and requested a property distribution and temporary and permanent spousal support. She further requested a restraining order prohibiting appellee from disposing of or dissipating assets of the marital relationship.
 {¶ 3} The court granted the restraining order as to both parties. There is no record of an award of temporary spousal support.
 {¶ 4} Appellee timely answered the complaint, and counterclaimed for divorce, also requesting an equitable apportionment of marital assets and debts. On October 19, 2001, appellee moved the court for an order apportioning expenses and marital debts, and an order requiring appellant to pay an appropriate portion of such during the pendency of the action. The magistrate granted this motion by an order dated November 30, 2001.
 {¶ 5} On February 12, 2002, appellee moved the court for an order determining that appellant had engaged in financial misconduct, including the dissipation and/or concealment of marital assets.
 {¶ 6} On March 22, 2002, appellee notified the court that appellant had filed a Chapter 13 petition in bankruptcy, case no. 02-041598, in the United States Bankruptcy Court for the Northern District of Ohio. Appellee contended that the bankruptcy petition placed an automatic stay on the divorce proceedings, pursuant to Section 362, Title 11, U.S. Code. Although the record is bereft of any order staying the case below, it does appear that the court stayed the case until the dismissal of the bankruptcy petition.
 {¶ 7} The record does contain an order of the bankruptcy court, dated January 23, 2003, granting a joint motion by appellant and appellee, settling certain controversies between them. This "Termed Settlement of Controversy Letter" provides, in pertinent part: "* * * The parties acknowledged and agree that this Agreed Order shall be incorporated into the divorce action pending in Trumbull County Court of Common Pleas, Domestic Relations Division, Case No. 2001 DR 437."
 {¶ 8} The final hearing in the action below was scheduled for July 9, 2003. Both parties filed pretrial statements, and appellee filed a deposition of appellant taken as part of the bankruptcy case.
 {¶ 9} In his pretrial statement, appellee stated that real property located at Raglan Drive, in Warren, Ohio, was in his name only, was premarital property purchased in 1978, was protected by a prenuptial agreement, and was granted to him in the prior bankruptcy proceedings. He further stated that he owned real property located on Broadway Street, in Warren, Ohio, which he had purchased in 1972, which was his separate property, and which was protected by the prenuptial agreement. He further stated that he and his parents owned real property located on Genesee, in Warren Ohio, which was purchased in 1973, was his separate property, and was protected by the prenuptial agreement. Appellee indicated that he wished to retain full ownership of these three properties.
 {¶ 10} In her pretrial statement, appellant asserted her possession of a marital interest in the three aforementioned properties which appellee considered non-marital. Appellant also listed thirteen credit accounts in her name, providing the balance on each.
 {¶ 11} Prior to trial, the parties stipulated to the submission of signed, notarized financial disclosure affidavits. The court limited questioning on issues contained in the affidavits to clarification of the statements submitted.
 {¶ 12} At the trial of this case, appellee admitted that she continued to use her credit cards during her bankruptcy petition. She admitted that, due to her expectation of a wrongful death settlement in the amount of $131,538.68, she dismissed her bankruptcy petition, believing the settlement would suffice to retire her debts. Appellant further testified at length regarding her spending habits, which formed the basis of appellee's allegations of financial misconduct.
 {¶ 13} The parties' prenuptial agreement, dated September 11, 1979, was admitted at trial as appellee's Exhibit C. It provides, in pertinent part:
 {¶ 14} "NOW, THEREFORE, in consideration of said marriage, and the Agrement [sic] of said [appellant] * * * [appellee] hereby promises and agrees to pay to said [appellant], immediately after the solemnization of said intended marriage, the sum of One Hundred Dollars ($100.00), the same to be and become her individual property.
 {¶ 15} "In consideration of the payment to her of said sum, the said [appellant] hereby agrees that the same shall be in lieu of any and all rights or claims of dower in and to the real property of [appellee], now owned, which may in any manner arise or accrue by virtue of said marriage."
 {¶ 16} The prenuptial agreement then continued by providing that for this same consideration of $100, appellant could dispose of his real and personal property as he saw fit, without limitation, and that appellant released all her interests, rights and claims in appellee's property. No evidence was admitted, nor does the prenuptial agreement contain any list of separate property at the time of marriage, nor any values for such property.
 {¶ 17} At trial, appellant testified that she never read the prenuptial agreement. She stated: "I was told that [appellee] was taking his first son * * * off his will and adding me on. I was left in the lobby. I was brought in the office and told to sign." Appellant further explained her failure to read the document by noting: "I was a child * * * I was getting married * * *." Appellant was approximately twenty-five years old at the time of her marriage. She was not represented by counsel when the prenuptial agreement was signed.
 {¶ 18} Appellee provided little testimony regarding the prenuptial agreement. He merely stated that the agreement was signed to protect the assets he brought into the marriage and that appellant "brought nothing into the marriage."
 {¶ 19} On July 15, 2003, the trial court issued initial findings of fact and conclusions of law. These did not include any distribution or division of retirement assets. On August 1, 2003, the court issued a supplemental finding of fact, allocating all appellee's retirement assets to him, without indicating the amount of these assets which were marital, and which were separate.
 {¶ 20} The final divorce decree was issued August 14, 2003.
 {¶ 21} The following pertinent items are drawn from the initial findings of fact and conclusions of law issued by the court below:
 {¶ 22} "1. The Parties were married June 29, 1982, in Warren, Ohio, and have one emancipated child * * *.[1]
 {¶ 23} "* * *
 {¶ 24} "3. The parties have lived separate and apart since 9/2/01. The parties have failed to cohabit for a period in excess of one continuous year and the court will grant a divorce to the parties on said ground.
 {¶ 25} "* * *
 {¶ 26} "6. The verified financial statements of each of the parties were received as testimony of each of the parties.
 {¶ 27} "* * *
 {¶ 28} "8. Randall has been employed throughout the marriage at Delphi Packard and is currently on a temporary layoff. He has been the primary support party in the marriage. He is in reasonably good health, aged 54, and expects continued employment. 2002 gross earnings were $72,237, 2001, $63,902.19, and earnings to date in 2003 of $39,659. He receives net rental income of approximately $2,439 per year.
 {¶ 29} "9. Real estate agreement — negotiated in bankruptcy. Ravine and Raglan properties are to be sold; wife will deliver a quit claim deed to husband for both. The court will order that the net proceeds of the sale will be used first to pay the balance due on the encumbrances and expenses of the sale. If there is a negative balance the debt will be assigned to and assumed by the husband per order of this court. If there is a positive balance the net will be assigned to and assumed by the husband per order of this court. In this regard the court finds that the properties are essentially a wash. It is ordered that the husband save wife harmless on the secured debt relative to this realty.
 {¶ 30} "* * *
 {¶ 31} "11. Jan Vlad is 46 years of age, in good health, and employable. She worked at the time of the marriage, was unemployed and mother and homemaker du ring the raising of the child, and came back to employment in the mid-1990's. She has worked at a minimal wage as sales clerk and make-up employee. Currently, she is employed by Simco Management where she is paid approximately $1,000 per month; in addition, she is provided a rent-free apartment in return for management services she provides. In this regard she is significantly underemployed and the court attributes annual income of $18,000 to her. In 2002 her gross income at Nordstroms was $27,938; 2001, $15,279.
 {¶ 32} "12. The court finds that the parties entered into a valid, enforceable prenuptial agreement that is binding upon the parties and is reflected in the judgment of this court.
 {¶ 33} "* * *
 {¶ 34} "13. Since separation the husband has continued to live in the homestead; both parties acknowledge that it must be sold and the proceeds applied to debt.
 {¶ 35} "14. The court makes the findings of fact, allocation of property and debts as set forth on Exhibit A, attached and incorporated herein. The assignee of each debt will be ordered to save the other harmless.
 {¶ 36} "15. By way of spousal support, the husband will be ordered to pay the amounts and accounts represented as assigned on exhibit A. In addition he will be ordered to pay $500 per month until her remarriage or living in a state of cohabitation, or 36 months, which first occurs, plus poundage, beginning August 1, 2003."
 {¶ 37} By its supplemental findings of fact and conclusions of law, the court below found as follows:
 {¶ 38} "17. By way of explanation footnotes I, J and K are attached to the original filed with the clerk. I is reserved; J recites `Husband worked 11 years prior to marriage at Delphi and contributed to pension during entire employment. His pension will pay $1,030 per month. His PSP shows a $51,989 [sic] balance, subject to a $16,576 loan which Husband will be ordered to pay and save wife harmless. * * *
 {¶ 39} "18. The Delphi pension is awarded to the Husband free and clear of any claim of Wife."
 {¶ 40} By its final judgment entry granting the parties' divorce, the court below divided the marital properties and debts, as well as awarding spousal support to appellant. Regarding the issues before this court on appeal, the trial court ruled, in pertinent part, that appellant should quit claim any interest in the Raglan Drive property to appellee, and that appellee should continue to hold the Genesee and Broadway Street properties free and clear of any claim by appellant. The trial court further incorporated by reference an Order of the bankruptcy court, whereby appellee was ordered to pay appellant $6,000.00 "as and for the above described properties." Also, the trial court again affirmed that appellee should retain his pension and personal savings plan from his employer, Delphi Packard, free and clear of any claim by appellant.
 {¶ 41} During the pendency of the divorce, it appears that appellant increased the parties' debt overall by continued use of her credit cards. It also appears that she received no award of temporary spousal support.
 {¶ 42} From the judgment of the trial court, appellant appeals and sets forth two assignments of error:
 {¶ 43} "[1.] The trial court erred to the prejudice of [appellant] in its determination of spousal support as it relates to duration and amount.
 {¶ 44} "[2.] The trial court erred to the prejudice of [appellant] by making a finding of a valid antenuptial (prenuptial) agreement between the parties."
 {¶ 45} Appellee cross-appeals from the trial court's judgment, setting forth one assignment of error:
 {¶ 46} [1.] The trial court abused it's [sic] discretion in not granting [appellant] the $6000 in credit he has paid in spousal support through bankruptcy court."
 {¶ 47} For the sake of clarity, we will address the assignments of error out of sequence. First, we will address appellant's second assignment of error, in which she argues that the trial court erred by finding the prenuptial agreement valid.
 {¶ 48} We must indulge every reasonable presumption in favor of the trial court's findings of fact. Seasons Coal Co., Inc. v. Cleveland
(1984), 10 Ohio St.3d 77, 80. If the evidence is susceptible to more than one interpretation, we must construe it in favor of the trial court's judgment. Ross v. Ross (1980), 64 Ohio St.2d 203, 204. A judgment supported by competent, credible evidence must not be reversed as being against the manifest weight of the evidence. The C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 49} Both parties claimed an interest in the Raglan Drive, Ravine Run, Genesee, and Broadway Street properties in their pretrial statements, and because the hearing was conducted only to clarify the evidence in the pretrial statements, the issue as to the enforceability of the agreement and the ultimate issue of division of property were sufficiently before the trial court.
 {¶ 50} It is well settled in Ohio that public policy allows the enforcement of prenuptial agreements. Gross v. Gross (1984),11 Ohio St.3d 99, paragraph one of the syllabus. Modern trends in marriage and divorce, and changing social attitudes, compelled the Gross
court to conclude that these types of agreements tend to promote marriage, rather than encourage divorce. Id. at 105.
 {¶ 51} "Such agreements are valid and enforceable (1) if they have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce." Gross at paragraph two of the syllabus.
 {¶ 52} These conditions precedent to the enforcement of a prenuptial agreement arise, in part, from the fact that the parties who have agreed to marry stand in a fiduciary relationship with each other. Id. at 108;Fletcher v. Fletcher (1994), 68 Ohio St.3d 464, 466.
 {¶ 53} The Gross court defined fraud, duress, coercion, and overreaching according to their generally accepted meanings. Gross at 105. "Overreaching" was specifically defined "in the sense of one party by artifice or cunning, or by significant disparity to understand the nature of the transaction, to outwit or cheat the other." Id.
 {¶ 54} The evidence in Gross was that the wife, who challenged the agreement, had benefit of counsel, and that there had been full disclosure of the husband's assets. The court found the agreement to be enforceable. However, the same court held invalid a prenuptial agreement on the basis that there had not been full disclosure of the proponent's financial worth. Zimmie v. Zimmie (1984), 11 Ohio St.3d 94, 98.
 {¶ 55} In Juhasz v. Juhasz (1938), 134 Ohio St. 257, paragraph three of the syllabus, the Court held that when a prenuptial agreement provides that one spouse shall receive an amount that is wholly disproportionate to the amount he or she would take under the law, the spouse asserting the validity of the contract bears the burden of showing that it was executed after full disclosure of the nature, value, and extent of the proponent's property, or that there was full knowledge thereof. The burden of proving fraud, duress, coercion, or overreaching remains with the party challenging the agreement. Fletcher at 467.
 {¶ 56} Turning to the instant matter, it is undisputed that appellee purchased three real properties prior to his marriage to appellant — i.e., a duplex on Genesee, a duplex on Raglan Drive, and a vacant lot on Broadway Street. In his pretrial statement, appellee stated that he purchased the Genesee duplex in 1973, that he had a one-third interest in the property, that its current value was $84,000 with no mortgage indebtedness, and that it was protected by the prenuptial agreement. In his pretrial statement, appellee further indicated that he purchased the Raglan Drive duplex in 1978, that it was titled in his name, that it was valued at $140,000 with a mortgage indebtedness of $90,658.15, and that it was protected by the prenuptial agreement. According to appellee's testimony, improvements were made upon and income was derived from both of these duplexes during the course of the marriage. No mention was made of the value of the properties at the time of the marriage.
 {¶ 57} Appellee also indicated in his pretrial statement that he purchased the vacant lot on Broadway Street in 1972, that its current value was $1,400 with no mortgage indebtedness, and that it was protected by the prenuptial agreement. It is undisputed that the lot had no improvements and was land-locked.
 {¶ 58} Appellant also listed an interest in each of these properties in her pretrial statement. The only difference between the valuations made in appellant's pretrial statement from that of appellee is that appellant values the lot on Broadway Street as being worth $4,000.00.
 {¶ 59} No exhibits were admitted verifying in whose name these properties were titled or their appraisal values at the time of the marriage, or if appellant even knew of their existence when she signed the prenuptial agreement.
 {¶ 60} At the hearing, appellee provided little testimony clarifying the circumstances surrounding the prenuptial agreement. He merely testified that the parties executed the agreement to protect his assets and because appellant "brought nothing into the marriage." As such, appellee provided no evidence that appellant entered into the agreement after full disclosure of appellee's assets. In fact, he provided no evidence at all regarding the events surrounding appellant's signing of the agreement. Similarly, the prenuptial agreement does not list any assets.
 {¶ 61} There is no mention by either party, whether on their pretrial statements or at the hearing, regarding the value of the premarital portion of the Delphi Packard pension. Furthermore, the lack of a comprehensive list of assets and their values at the time of the marriage (which obviously included the pension) did not meet the requirements set forth by the court in Gross for full disclosure of assets.
 {¶ 62} Accordingly, appellee has failed to satisfy the second prong of the Gross test regarding enforceability of prenuptial agreements, since he failed to show that he had made full disclosure to appellant of the nature, value, and extent of his property at the time the prenuptial agreement was signed. Gross at paragraph two of the syllabus. Therefore, the trial court's finding that the prenuptial agreement was valid is error and against the manifest weight of the evidence. Appellant's second assignment of error is with merit.
 {¶ 63} This does not, however, invalidate appellee's claim to separate property acquired before the marriage. Nevertheless, the court below failed to provide the requisite analysis required under R.C. 3105.171(B). This section requires that in any divorce proceeding, the trial court must make a determination of what constitutes marital property and what constitutes separate property. To facilitate this determination, R.C.3105.171 sets forth the definitions of both separate and marital property. Marital property includes "all income and appreciation on separate property, due to labor, monetary or in-kind contribution of either or both spouses that occurred during the marriage[.]" R.C.3105.171(A)(3)(a)(iii). See, also, Kotkowski v. Kotkowski (May 19, 1995), 11th Dist. No. 94-P-0027, 1995 Ohio App. LEXIS 2100. Any normal or natural appreciation on separate property which is due to inflation or market change remains non-marital. Cf. Worthington v. Worthington
(1986), 21 Ohio St.3d 13. None of this was considered in the trial court's division of assets. Further, the court made no analysis as to the parties' marital and non-marital property.
 {¶ 64} Appellant was entitled to any appreciation on the Raglan Drive and Genesee properties from the date of the parties' marriage in 1979 to the date of their divorce in 2003. She was entitled to twenty-four years' appreciation on appellee's onethird interest in the Genesee property, totaling $28,000 at the time of the hearing, as well as twenty-four years' appreciation on the Raglan Drive property. Regarding the Broadway Street property, it is undisputed that it was never improved due to labor, monetary or in-kind contribution during the marriage. Any appreciation on this property would be due to inflation or market change, thus making such appreciation non-marital. However, because the trial court erred in finding that the prenuptial agreement was valid, it also erred by failing to classify the appreciation on the Raglan Drive and Genesee properties as marital property.
 {¶ 65} This court notes that the trial court did incorporate in its judgment a prior order of the bankruptcy court in appellant's Chapter 13 proceedings, whereby appellant received $6,000 from appellee "as and for" the properties in question. It may be that the trial judge believed this order of the bankruptcy court recompensed appellant for any marital interest she had in the subject properties. However, it also seems from appellee's single assignment of error that he regarded this $6,000 as spousal support. In any case, it is unclear from the record submitted whether this $6,000 was meant as a property division or as spousal support by the trial court. And, we still believe that the law of Ohio requires an analysis by the trial court regarding the marital and non-marital portions of the real properties in question, no matter what the bankruptcy court did.
 {¶ 66} Further, the court below did not provide the necessary analysis in dividing the pension assets. The court was required to value appellee's pre-marital separate portion of his pension, then determine the marital share of his pension, less the marital debt as against those assets. Further, while a vested pension plan accumulated during the marriage is generally a marital asset, the portion of a public pension equivalent to Social Security benefits is not subject to division in divorce. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 133; Hoyt v. Hoyt
(1990), 53 Ohio St.3d 177, at fn. 3. Therefore, before a pension can be divided as marital property, an amount equivalent to Social Security benefits should be off set. DeChristefero v. DeChristefero, 11th Dist. No. 2001-T-0055, 2003-Ohio-3065. See also, Smith v. Smith (1993),91 Ohio App.3d 248, 255.
 {¶ 67} An equitable award of spousal support is dependent upon an equitable division of marital property. Therefore, upon remand, the trial court shall divide the marital property and debt and, thereafter, fashion an award for spousal support. When making an award of spousal support, the court must consider the fourteen factors outlined in R.C.3105.18(C)(1). The award of spousal support must "provide some illumination of the facts and reasonings underlying the judgment. * * * This is true even though evidence is introduced below and contained in the record which may support some award of spousal support." (Citations omitted.) Herman v. Herman (Mar. 28, 1997), 11th Dist. No. 96-P-194, 1997 Ohio App. LEXIS 1223, at 11.
 {¶ 68} The court in its findings took into consideration appellant's potential award for a wrongful death action. It is not clear from the record if this was considered separate or marital property or if the court considered this income for purposes of support.
 {¶ 69} In summary, appellant's second assignment of error is with merit. Her first assignment of error, and appellee's sole cross-assignment of error, are also with merit but are not yet ripe for review. We hereby reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.
O'Neill, J., concurs, Grendell, J., dissents with Dissenting Opinion.
[1] Both parties testified that they were married October 27, 1979. This discrepancy with the initial findings of fact and conclusions of law is immaterial to the instant appeal.