[Cite as *Fordeley v. Fordeley*, 2023-Ohio-261.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| CHRISTINA FORDELEY, | **CASE NO. 2021-T-0020** |
| Plaintiff-Appellee/<br>Cross-Appellant, | |
| - v - | Civil Appeal from the<br>Court of Common Pleas,<br>Domestic Relations Division |
| MARK FORDELEY, et al., | |
| Defendant-Appellant/<br>Cross-Appellee. | Trial Court No. 2012 DR 00330 |

**O P I N I O N**

Decided: January 30, 2023
Judgment: Affirmed in part and reversed in part; remanded

*Matthew C. Giannini*, 1040 South Commons Place, Suite 200, Youngstown, OH 44514 and *Louis E. Katz*, 70 West McKinley Way, Suite 16, Poland, OH 44514 (For Plaintiff-Appellee/Cross-Appellant).

*James J. Crisan*, Martin F. White Co., LPA, 156 Park Avenue, N.E., P.O. Box 1150, Warren, OH 44482 (For Defendant-Appellant/Cross-Appellee).

THOMAS R. WRIGHT, J.

{¶1} This matter is before us on the appeal of Mark Fordeley ("Husband") and the cross-appeal of Christina Fordeley ("Wife") from the trial court's entry, following remand from this court, declaring the parties' prenuptial agreement invalid and incorporating the previously issued final divorce decree. The judgment is affirmed in part and reversed in part.

{¶2} The parties met in early 1993 when Wife was a senior in high school. Husband was 30 years old and had been operating his own vehicle cleaning business,

Buff-N-Stuff, for more than a decade. He also owned multiple tracts of land throughout Trumbull County, including the Buff-N-Stuff property, as well as a majority interest in Fordeley's Finest Pre-Owned Auto, a small used-car lot that he operated with his father.

{¶3} After Wife's graduation from high school in spring 1993, the parties began dating, and she began working for Husband at his two businesses. She soon became involved in maintaining the books for his businesses.

{¶4} Within a few months after they started dating, the parties became engaged, but Husband consistently told Wife that he would not marry her unless she signed a prenuptial agreement. In December 1993, Wife became pregnant. Four months later, the parties went to Las Vegas where they planned to be married. The ceremony did not proceed, however, because Husband was unable to locate an attorney to draft a valid prenuptial agreement.

{¶5} In July 1994, Husband hired a local attorney to write a prenuptial agreement. Attached to the prenuptial agreement were two schedules of assets, one for each party. Wife's schedule included four items of separate property, totaling $13,250. Husband's schedule listed 42 items of separate property, with a total value of $438,300. His schedule did not, however, include values for his businesses.

{¶6} On July 27, 1994, Husband drove Wife to his attorney's office to pick up the prenuptial agreement that the parties eventually executed. Wife was eight months pregnant and had never seen the agreement. After retrieving the agreement, Husband drove Wife to a second attorney's office. According to Wife, she did not make the appointment to see the second attorney and did not pay his fee. Before she went into the

2

second attorney's office alone, Husband again told her that he would not marry her unless she signed the prenuptial agreement.

{¶7} After reading the entire agreement together, the second attorney told Wife that the terms were not favorable to her and advised her not to sign it. Despite this, Wife signed the agreement. Wife explained that she signed the agreement because Husband told her to sign it; she did not want her child to be illegitimate; and she did not want to bring shame upon her family. The second attorney then prepared a written waiver stating that he explained some of his concerns about the terms and advised her to give it careful consideration before executing it. The waiver further provides that Wife understood she would not receive any separate compensation for work she performed for Husband's businesses during their marriage. Wife signed the waiver.

{¶8} When Wife's appointment with the second attorney concluded, Husband returned to his attorney's office and executed the prenuptial agreement. Two days later, the parties married. On August 23, 1994, their first child was born. During their 20-year marriage, the parties had six children.

{¶9} Through the years, the parties purchased multiple tracts of land in both of their names, including the marital residence. The funds used to buy the tracts were supplied solely by Husband. In addition, he purchased other tracts in his name. Moreover, at some point, he formed a third business, Fordeley Rentals, LLC. This entity also owns multiple tracts of land and receives rental income on some of the property.

{¶10} Wife filed for divorce in August 2012. Husband subsequently moved the trial court to declare the prenuptial agreement enforceable, and Wife moved to have the agreement deemed unenforceable.

Case No. 2021-T-0020

**{¶11}** The trial court held a two-day hearing regarding enforceability and ruled that the agreement was unenforceable for two reasons: (1) Wife signed the agreement while under duress; and (2) Husband engaged in coercion and overreaching.

**{¶12}** Thereafter, trial was held on 13 separate days throughout 2017. Both sides presented expert testimony as to the value of certain assets, including the businesses and some tracts of property. In distributing the marital assets, the court awarded Husband all the businesses, including Buff-N-Stuff. The court awarded Wife various properties valued nearly equal to the assets awarded to Husband, finding that she would be able to generate sufficient income from the properties distributed to her. No spousal support was awarded.

**{¶13}** Husband appealed, challenging various aspects of the final divorce decree, including the conclusion that the parties' prenuptial agreement is not enforceable. *Fordeley v. Fordeley*, 11th Dist. Trumbull No. 2018-T-0006, 2020-Ohio-5380, ¶ 1. This court reversed the trial court's ruling as to the enforceability of the prenuptial agreement on the basis that "the facts cited by the trial court are insufficient to establish duress, coercion, or overreaching." *Id.* at ¶ 32. This court remanded the matter for the trial court to "conduct further proceedings including, but not limited to, considering and ruling on [the] other arguments regarding the validity of the prenuptial agreement, and thereafter, distributing the parties' assets and liabilities accordingly, and awarding spousal support, if any." *Id.* at ¶ 34.

**{¶14}** On remand, the trial court held an evidentiary hearing. Husband testified and was cross-examined; Wife was cross-examined. The parties stipulated that the court would review the transcripts of the prenuptial attorneys' previous testimony. On April 9,

4

2021, the trial court again declared the prenuptial agreement invalid for two reasons: (1) Husband failed to meet his burden of full disclosure of the nature, value, and extent of his property; and (2) the terms of the agreement promote divorce and the profiteering therefrom. The trial court further held that "all prior orders of this court are in full effect."

{¶15} From this entry, Husband assigns six errors for review; Wife assigns nine. We first consider Husband's assigned error pertaining to the prenuptial agreement:

> [1.] The trial court abused its discretion in determining that the parties' prenuptial agreement is invalid and unenforceable.

{¶16} A prenuptial, or antenuptial, agreement is a contract entered into in contemplation and in consideration of a future marriage wherein the property rights and economic interests of either prospective spouse, or both, are determined and set forth. *Gross v. Gross*, 11 Ohio St.3d 99, 102, 464 N.E.2d 500 (1984). "It is well settled in Ohio that public policy allows the enforcement of prenuptial agreements." *Fletcher v. Fletcher*, 68 Ohio St.3d 464, 466, 628 N.E.2d 1343 (1994), citing *Gross* at paragraph one of the syllabus. "Modern trends in marriage and divorce, and changing social attitudes, compelled the [Ohio Supreme] court to conclude that these types of agreements tend to promote marriage, rather than encourage divorce." *Vlad v. Vlad*, 11th Dist. Trumbull No. 2003-T-0126, 2005-Ohio-2080, ¶ 50, citing *Gross* at 105.

{¶17} In reviewing a trial court's ruling as to the enforceability of a prenuptial agreement, an appellate court cannot reweigh the evidence, but instead must uphold the trial court's factual findings when they are supported by competent evidence. *Fletcher* at 468, citing *Ross v. Ross*, 64 Ohio St.2d 203, 414 N.E.2d 426 (1980). "In addition, we will indulge all reasonable presumptions consistent with the record in favor of lower court

5

Case No. 2021-T-0020

decisions on questions of law." *Fletcher* at 468, citing *In re Sublett*, 169 Ohio St. 19, 157 N.E.2d 324 (1959).

{¶18} Prenuptial agreements "'are valid and enforceable (1) if they have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce.'" *Fletcher* at 466, quoting *Gross* at paragraph two of the syllabus. "These conditions precedent to the enforcement of a prenuptial agreement arise in part from the fact that parties who have agreed to marry stand in a fiduciary relationship to each other." *Fletcher* at 466, citing *Gross* at 108 and *Juhasz v. Juhasz*, 134 Ohio St. 257, 16 N.E.2d 328 (1938), paragraph one of the syllabus.

{¶19} The trial court based its unenforceability ruling upon the latter two prongs of the *Gross* test, and Husband challenges both conclusions.

{¶20} Regarding the second prong: "When an antenuptial agreement provides disproportionately less than the party challenging it would have received under an equitable distribution, the burden is on the one claiming the validity of the contract to show that the other party entered into it with the benefit of full knowledge or disclosure of the assets of the proponent." *Fletcher* at paragraph one of the syllabus; *accord Juhasz* at paragraph three of the syllabus (the spouse defending the agreement must show full disclosure of the nature, extent and value of his or her property or that the other spouse had full knowledge thereof without such disclosure).

{¶21} Here, there is no dispute that the prenuptial agreement provides disproportionately less to Wife than she would receive under an equitable distribution, as

6

she renounced her claim to any future accumulation of assets Husband would receive during the marriage, including earnings and proceeds of sale. Accordingly, the agreement is enforceable only if Husband demonstrates that Wife entered into the agreement with the benefit of either his full disclosure or her full knowledge of his assets.

{¶22} The trial court held that Husband did not meet this burden because the prenuptial agreement failed to assign monetary values to Husband's businesses, Buff-N-Stuff and Fordeley's Finest Pre-Owned Auto, and there was insufficient evidence that Wife, as a 19-year-old recent high school graduate, possessed an "advanced business acumen" such that she "had a grasp on the nature, value, and extent of" Husband's businesses.[1]

{¶23} Husband testified that the values of these two businesses, of which he was the sole proprietor, were merely the assets listed on his schedule attached to the prenuptial agreement, which included bank account balances, shop equipment, and the building. Husband's prenuptial attorney testified that no appraisals were obtained to value the businesses. The trial court, unpersuaded, summarily stated that this "is not a complete picture of a business value."

{¶24} There is "no requirement that the parties to such an agreement itemize their various assets and their worth." *Hook v. Hook*, 69 Ohio St.2d 234, 238, 431 N.E.2d 667 (1982). And Husband relies on opinions from many of our sibling districts, holding that a spouse's general knowledge of the nature and extent of the other's wealth and assets,

---

1. The trial court also found that Husband had not disclosed that he owned property at 575 Franklin in Warren. It is undisputed, however, that Husband did not acquire this asset until 2003, nearly 10 years after the prenuptial agreement was executed.

Case No. 2021-T-0020

even without detailed itemization as to value, is sufficient to satisfy the disclosure test. *See Millstein v. Millstein*, 8th Dist. Cuyahoga Nos. 79617 *et seq.*, 2002-Ohio-4783, ¶ 84; *see also Gates v. Gates*, 7th Dist. Columbiana No. 06 CO 60, 2007-Ohio-5040, ¶ 63 ("full disclosure does not require that a listing of the property * * * be attached to the prenuptial agreement"); *Johnson v. Johnson*, 2d Dist. Miami No. 2010 CA 2, 2011-Ohio-500, ¶ 47 (not every minor interest must be disclosed for a prenuptial agreement to be valid); *Leach v. Leach*, 2016-Ohio-8569, 80 N.E.3d 1044, ¶ 32 (5th Dist.) (when the agreement does not purport to provide an exclusive list of all assets, the fact that property is not identified in the agreement is not determinative of validity); *Heimann v. Heimann*, 3d Dist. Hancock No. 5-21-11, 2022-Ohio-241, ¶ 33 (disclosure need not be "drastically sweeping"; i.e., "the spouse need not know the other's *exact* means"). *But see Vanderbilt v. Vanderbilt*, 9th Dist. Medina Nos. 11CA0103-M & 11CA0104-M, 2013-Ohio-1222, ¶ 12-13 (declining to reach the issue of whether this approach to the disclosure test is valid).

{¶25} Here, Husband's failure to provide the value of his businesses in the schedule of assets was not, as in the above cases, a minor interest or unexacting disclosure. It is more similar to that described in *In re Estate of Bishop* (May 8, 1997), Muskingum App. No. 96-0039, unreported. There, "the prenuptial disclosure listed several pieces of real property, several savings accounts, partial ownership of a machine shop, several vehicles, insurance policies, and other items. Specific values were ascribed to the savings accounts, but not to the real property or the machine shop, nor was the extent of the husband's interest in the machine shop disclosed. The prenuptial agreement provided that the wife got nothing in event of death or divorce." *Johnson* at ¶ 45. "The Fifth Appellate District held that, under the facts presented, the extent of the husband's

8

assets had not been fully disclosed to the wife prior to entering the prenuptial agreement, and therefore the agreement was invalid and unenforceable." *Id.* Further, in *Vlad*, this court held that "the lack of a comprehensive list of assets *and their values* at the time of the marriage * * * did not meet the requirements set forth by the court in *Gross* for full disclosure of assets" and rendered the prenuptial agreement unenforceable. (Emphasis added.) *Vlad*, 2005-Ohio-2080, at ¶ 61-62.

{¶26} In neither of these cases, however, was it discussed whether the wife had full knowledge of the value of the husband's assets, despite the lack of the husband's full disclosure. Here, at the hearing held following remand, Husband's attorney elicited testimony from both parties as to the extent of Wife's knowledge thereof. In this regard, the parties' testimony did not conflict.

{¶27} Both parties testified that Wife began working for Husband in April or May 1993, just prior to her high school graduation. Wife did well in school; Husband testified that she graduated fourth in her class. Husband testified that he had started the businesses approximately 10 years prior. The parties became engaged that summer and married the following summer, in July 1994. Both parties testified that during this period of time, for approximately 15 months prior to executing the prenuptial agreement, Wife did the bookkeeping and banking for the businesses, wrote checks and paid the bills, dealt with the accountant, met with vendors and business associates, answered the phone and performed other secretarial tasks, and helped deliver cars to patrons. Husband testified that Wife worked with him all day, every day, Monday through Saturday. Wife also had access to the business records, but neither party testified whether she in fact accessed them.

9

Case No. 2021-T-0020

{¶28} The trial court found that this was insufficient evidence to support the conclusion that Wife had full knowledge of the value of Husband's businesses. There was no testimony here that Wife had *any* independent knowledge thereof—of the nature and extent, yes; of the value, no. *See, e.g., Zimmie v. Zimmie*, 11 Ohio St.3d 94, 98, 464 N.E.2d 142 (1984) (where the wife testified that no one explained to her the undisclosed value of husband's corporate assets, the wife did not have full knowledge of the husband's financial worth). Although there is no requirement that a spouse have an "advanced business acumen" in order to understand the value of a business, the fact that expert testimony was necessary in this case to value the businesses for purposes of division of assets further supports the trial court's conclusion.

{¶29} Given our standard of review, we are unable to conclude that the trial court erred in invalidating the prenuptial agreement under the second prong of the *Gross* test. This holding renders moot Husband's challenge to the trial court's conclusion on the third prong of the *Gross* test, i.e., that the terms of the prenuptial agreement promote divorce and the profiteering therefrom.

{¶30} Husband's first assignment of error is without merit.

{¶31} We next consider Wife's second assignment of error, in which she challenges the duration of the marriage as set by the trial court:

> [2.] The trial court erred by using December 1, 2014 as the end date for the term of "during the marriage" of the parties.

{¶32} "A court in a divorce action may set the marriage duration as something other than 'the period of time from the date of the marriage through the date of the final hearing,' if using the actual marriage dates 'would be inequitable.'" *Walsh v. Walsh*, 157

10

Ohio St.3d 322, 2019-Ohio-3723, 136 N.E.3d 460, ¶ 3, fn. 1, quoting R.C. 3105.171(A)(2). "If the court selects dates that it considers equitable in determining marital property, 'during the marriage' means the period of time between those dates selected and specified by the court." R.C. 3105.171(A)(2)(b).

{¶33} "A trial court enjoys broad discretion in determining the dates constituting the duration of the marriage." *Riley v. Riley*, 11th Dist. Ashtabula No. 2012-A-0037, 2013-Ohio-1604, ¶ 42, citing *Berish v. Berish*, 69 Ohio St.2d 318, 319-320, 432 N.E.2d 183 (1982). "'[A] trial court may use a de facto termination of marriage date when the evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances.'" *Riley* at ¶ 45, quoting *Marini v. Marini*, 11th Dist. Nos. 2005-T-0012 & 2005-T-0059, 2006-Ohio-3775, ¶ 13.

{¶34} The first day of the final hearing was February 13, 2017. On the second day of the final hearing, after testimony on asset values had begun, Husband moved the trial court to determine a de facto termination date of the marriage. Wife opposed. After hearing testimony on the issue, the court determined that it "cannot accept the first date of trial as requested by [Wife] as this case has been pending over four years." In the final divorce decree, the court concluded, "taking into account all matters equitable," that December 1, 2014, was the de facto end date of the marriage.

{¶35} Wife maintains that the trial court should have used the final hearing date as the end date of the marriage. She contends that the trial court did not fully explain why the mere passage of time rendered the final hearing date inequitable, "especially in light of the fact that almost all of the delay was caused by [Husband]." Wife's appellate brief cites to nothing in the record that supports this allegation. She further argues that the trial

11

court used different and inconsistent dates in determining the amount of the parties' debts. It appears this allegation may refer to certain statement dates of the parties' debts, but neither the divorce decree nor Wife's appellate brief set forth when the debts were acquired.

{¶36} Wife has not set forth a convincing argument as to why the date of December 1, 2014, is inequitable, and we discern no abuse of discretion.

{¶37} Wife's second assignment of error is without merit.

{¶38} Next, Husband's third assigned error challenges the trial court's valuation of his car detailing business:

> [3.] The trial court committed prejudicial error and abused its discretion in adopting a methodology to evaluate the Buff-N-Stuff business, solely on net profits, at a value of $125,713.00, without making an adjustment for the salary of the sole proprietor and considering the rent and equipment required to run the business.

{¶39} Each spouse presented expert testimony as to Buff-N-Stuff's fair market value, each side offering significantly different appraisals. The trial court adopted the value assigned by Wife's expert, finding his valuation to be more credible, accurate, and reliable. Husband maintains that the appraisal of Wife's expert is completely unreliable and that the trial court failed to give credence to the qualifications of his own experts. Specifically, Husband argues that in evaluating a business for its fair market value, it is improper to base the value of the business on its net profits without factoring in the sole proprietor's salary, ownership or rental of the property, and the cost of equipment and supplies.

12

{¶40} "'The valuation of property in a divorce case is a question of fact. * * * Consequently, the trial court's judgment will not be reversed as long as it is supported by some competent, credible evidence.'" *Davis v. Davis*, 11th Dist. Geauga No. 2011-G-3018, 2013-Ohio-211, ¶ 40, quoting *Covert v. Covert*, 4th Dist. Adams No. 03CA778, 2004-Ohio-3534, ¶ 6.

{¶41} "As to the use of a particular method of determining an asset's value, a trial court has no obligation to adopt or follow any specific method of valuation." *Davis* at ¶ 41, citing *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, 925 N.E.2d 167, ¶ 27 (3d Dist.). "Thus, when a 'value' question is raised on appeal, the task of the appellate court '"is not to require the adoption of any particular method of valuation, but to determine whether, based on all relevant facts and circumstances, the [trial] court abused its discretion in arriving at a value."'" *Davis* at ¶ 41, quoting *McLeod v. McLeod*, 11th Dist. Lake No. 2000-L-197, 2002-Ohio-3710, ¶ 61, quoting *James v. James*, 101 Ohio App.3d 668, 681, 656 N.E.2d 399 (1st Dist.1995). "Pursuant to the foregoing precedent, an abuse of discretion cannot be deemed to have occurred when the trial court's 'value' determination is supported by some competent, credible evidence." *Davis* at ¶ 41, citing *Huelskamp* at ¶ 27.

{¶42} Wife's expert, William Leicht, is a CPA, has a Certificate in Valuation, and is the owner of an accounting and valuation practice. He has been a certified appraiser since 2003 and has performed almost 200 business evaluations. Mr. Leicht initially gave a valuation based on the duration of the marriage ending on the first day of the final hearing. He returned to court and gave an updated valuation after the trial court determined the de facto end date of the marriage. For this valuation, Mr. Leicht reviewed

13

income tax returns for 2011, 2012, 2013, and 2014. He used the "income method" for his valuation and performed a normalizing adjustment to the amounts claimed for legal and professional fees. Mr. Leicht determined the average income for that four-year period was $40,046.00. He ultimately valued the business at $125,713.00 based upon a capitalization rate of 31.17% with a marketability discount of 5%.

{¶43} Husband's experts, Alan Friedkin and Thomas Kelly, appraised the fair market value of Buff-N-Stuff significantly lower.

{¶44} Mr. Friedkin owns Friedkin Realty LLC, a commercial real estate brokerage, and A.S. Friedkin and Associates, a business brokerage and property management company. As a business broker and business transfer specialist, Mr. Friedkin has experience helping people buy and sell businesses; he is not an accountant or a certified business valuation analyst. Mr. Friedkin testified that he took information from Husband as to how the business operates, how he is paid, his involvement in the business, and the assets of the business. He was also provided with income tax returns for 2013, 2014, and 2015. He valued the business by reviewing all of this information and using an Industry Rule of Thumb from a business reference guide used by business brokers. Mr. Friedkin testified that the "Rule of Thumb" for an auto detailing shop is 40-45% of annual sales plus inventory, but that he instead took 50% of the three-year average of net profit for the years 2013 through 2015. He also did not consider the business assets or inventory to determine value. He ultimately valued the business at $9,250.00.

{¶45} Mr. Kelly is a commercial real estate and business broker and consultant. He brokers businesses and investment properties for sale, is a licensed real estate appraiser, and is certified as a business analyst. Mr. Kelly valued the business by

14

reviewing bank statements and tax returns from 2011 through 2016, as well as the initial appraisal of Wife's expert. He testified that his approach was basically the "income method" but he did not apply a capitalization rate because the imputed information led to a negative income. Specifically, he utilized a rental factor and considered owner compensation, which Wife's expert did not do, that resulted in a negative cash flow of $41,000.00 for the business. Mr. Kelly ultimately valued the business at "a couple thousand dollars if you are lucky."

{¶46} In finding that the fair market value of Buff-N-Stuff was $125,713.00 as of December 1, 2014, the de facto termination date of the marriage, the court concluded that Mr. Leicht's valuation was more credible, accurate, and reliable. The court based this conclusion on the experts' differing qualifications and experience and also found that Mr. Kelly's valuation was not supported by evidence that the business had been profitable over the four-year period analyzed. Because the trial court's findings are supported by some competent, credible evidence, Husband has failed to demonstrate any abuse of discretion as to valuation of his Buff-N-Stuff business.

{¶47} Husband's third assigned error lacks merit.

{¶48} We next consider Husband's fourth assigned error:

> [4.] The trial court committed prejudicial error and abused its discretion in failing to recognize and award Appellant's father equitable ownership of six automobiles titled in the name of Wheelz Gone Wild LLC.

{¶49} Husband and his father, Frank Fordeley ("Frank"), formed a partnership registered as Wheelz Gone Wild LLC (formerly Fordeley's Finest Pre-Owned Auto). Husband maintains that Frank personally bought and paid for certain vehicles and their

15

license plates, repairs, and maintenance, but that they were titled to the LLC for insurance purposes. Husband contends, therefore, that these vehicles should not have been included in the marital value of the LLC and that the trial court was equitably required to award them to Frank.

{¶50} The parties do not dispute that the vehicles at issue are titled to Wheelz Gone Wild LLC. Therefore, because title to an automobile is proof of its ownership, Wheelz Gone Wild LLC is the presumptive owner of the vehicles. *See* R.C. 4505.04(B). Despite testimony that supports the contention that Frank is the equitable owner of the vehicles, the trial court denied Frank's attempt to claim the vehicles as personal to him because he was not a third party claiming any interest in marital property in this case. We agree.

{¶51} "A person * * * claiming an interest in property * * * out of which a party seeks a division of marital property, a distributive award, or an award of spousal support or other support, *may* be made a party defendant." (Emphasis added.) Civ.R. 75(B)(1). *See also Hudson v. Hudson*, 6th Dist. Lucas No. L-21-1040, 2021-Ohio-4036, ¶ 19 ("We have construed 'interest' as used in Civ.R. 75(B)(1) to mean 'a lien or ownership, legal or equitable.'"). However, "[i]n the absence of other parties as third party defendants, the trial court's only obligation [is] to divide the assets equitably between the parties." *Donnelly v. Donnelly*, 2d Dist. Greene No. 2002-CA-53, 2003-Ohio-1377, ¶ 42, citing *Alimonos v. Alimonos*, 2d Dist. Montgomery No. 15294, 1996 WL 535289 (Aug. 23, 1996) (in-laws were added as third party defendants as they claimed an interest in the home where the parties to the divorce lived); *Fisher v. Fisher*, 3d Dist. Putnam No. 12-96-1, 1996 WL 481511 (Aug. 14, 1996) (father-in-law was added to divorce action as a third

16

party defendant based on allegations he had fraudulently taken possession of and concealed marital assets); *Benson v. Benson*, 11th Dist. Ashtabula No. 2000-A-0010, 2001 WL 733536 (June 29, 2001) (party claiming lien on cattle was added to the divorce action); and *Perich-Varie v. Varie*, 11th Dist. Trumbull No. 98-T-0029, 1999 WL 689741 (Aug. 27, 1999) (in-laws who claimed to own the marital premises were added to the divorce action as third party defendants).

{¶52} Here, Frank was not made a party to the divorce action. Thus, the trial court was not required to address any interest, equitable or otherwise, that he may have in the vehicles titled to the LLC. The trial court appropriately allocated the marital value of the LLC between the only parties to the action, determining their respective rights in the property, and neither recognizing nor negating any interest Frank may have in the property. *See Galloway v. Khan*, 10th Dist. Franklin No. 06AP-140, 2006-Ohio-6637, ¶ 22, citing *Donnelly* at ¶ 42. *But see Koval v. Koval*, 129 Ohio App.3d 68, 71, 716 N.E.2d 1217, 1219 (11th Dist.1998) (where the wife and her mother jointly owned shares of stock, the trial court's decision to declare the stock a marital asset was error without first joining the mother as a necessary party to the action and providing her an opportunity to be heard).

{¶53} Husband's fourth assigned error lacks merit.

{¶54} Husband's and Wife's remaining assigned errors challenge the trial court's classification and division of assets and obligations.

{¶55} "In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. * * * [T]he court shall divide the marital and separate property equitably between the spouses, in accordance with this

17

Case No. 2021-T-0020

section."  R.C. 3105.171(B).  "Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section."  R.C. 3105.171(C)(1).

{¶56}  "A trial court is vested with broad discretion when fashioning a division of both marital property and marital debt."  (Citations omitted.)  *Calkins v. Calkins*, 2016-Ohio-1297, 62 N.E.3d 686, ¶ 22 (11th Dist.).  "However, a trial court's discretion is not unbridled. The award need not be equal, but it must be equitable. A reviewing court will not substitute its judgment for that of the trial court unless the trial court's decision is unreasonable, arbitrary or unconscionable."  (Internal citations omitted.)  *Bisker v. Bisker*, 69 Ohio St.3d 608, 609, 635 N.E.2d 308 (1994); *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989) (a trial court's division will not be reversed on appeal absent an abuse of discretion).  "'When applying this standard of review, we must view the property division in its entirety, consider the totality of the circumstances, and determine whether the trial court abused its discretion when dividing the spouses' marital assets and debts.'"  *Calkins* at ¶ 22, quoting *Baker v. Baker*, 4th Dist. Washington No. 07CA24, 2007-Ohio-7172, ¶ 28, citing *Briganti v. Briganti*, 9 Ohio St.3d 220, 222, 459 N.E.2d 896 (1984).

{¶57}  We next consider Husband's second assigned error:

> [2.] The trial court committed prejudicial error and abused its discretion in awarding Appellee one-half of Appellant's premarital businesses, and evaluating them in excess of their fair market value.

18

**{¶58}** Husband argues that the trial court incorrectly classified Buff-N-Stuff and Wheelz Gone Wild, businesses he commenced eight years prior to the marriage, as marital property in their entirety. Wife concedes in her brief that "even though the businesses may have been started before the parties married, *that portion of the value of the businesses that appreciated and grew from the effort of the parties during their marriage is marital property*, of which [she is] entitled to her equitable share." (Emphasis added.)

**{¶59}** By statute, "marital property" does not include any "separate property." R.C. 3105.171(A)(3)(b). "[T]he party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." (Citations omitted.) *Speece v. Speece*, 2021-Ohio-170, 167 N.E.3d 1, ¶ 35 (11th Dist.). "A trial court's characterization of property as separate or marital will be upheld when the record contains some competent credible evidence to support the trial court's conclusion." (Citations omitted.) *Id.* at ¶ 103.

**{¶60}** "Separate property" includes, in relevant part, "any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage"; and "passive income and appreciation acquired from separate property by one spouse during the marriage." R.C. 3105.171(A)(6)(a)(ii)-(iii). "'Passive income' means income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4).

**{¶61}** "Marital property" includes, in relevant part, (i) all real and personal property currently owned by one or both of the spouses that was "acquired by either or both of the spouses during the marriage"; (ii) all interest that one or both of the spouses currently has

19

in any real or personal property that was "acquired by either or both of the spouses during the marriage"; and (iii) "income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a). *See also Middendorf v. Middendorf*, 82 Ohio St.3d 397, 696 N.E.2d 575 (1998), syllabus ("Under R.C. 3105.171, an increase in the value of separate property due to either spouse's efforts is marital property."); *Iacampo v. Oliver-Iacampo*, 11th Dist. Geauga No. 2011-G-3026, 2012-Ohio-1790, ¶ 20 ("Active appreciation, defined as an increase in the fair market value of property that is 'due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage,' is marital property.").

{¶62} It is undisputed that the businesses were commenced years prior to the 1994 marriage of the parties. The parties met after the businesses were in full operation, and Wife began working for Husband prior to their marriage. Thus, the businesses themselves could only be classified as separate property because they were acquired by Husband prior to the date of the marriage. *See* R.C. 3105.071(A)(6)(a)(iii). However, any income and appreciation on this separate property that occurred during the marriage due to the labor, monetary, or in-kind contribution of either or both parties, i.e. active appreciation, is marital property. *See* R.C. 3105.171(A)(3)(a)(iii). There is no disputing the fact that both parties contributed to the businesses during the marriage. And there was evidence that the businesses had premarital value, at the very least in the amount of equipment and vehicles owned prior to the marriage. The trial court concluded that "there was no evidence of any separate property or premarital value" in Buff-N-Stuff and rendered no opinion or conclusion as to a premarital value in Wheelz Gone Wild, declaring

20

the marital value equal to Husband's 90% interest in the present value of the partnership. These conclusions are not supported by competent, credible evidence. The trial court erred in classifying the businesses in their entirety as marital property subject to division, rather than the active appreciation of the businesses that occurred during the marriage. *See*, *e.g.*, *Blair v. Blair*, 3d Dist. Marion No. 9-01-36, 2002 WL 359470 (Mar. 5, 2002).

**{¶63}** Husband's second assigned error is well taken. On remand, the trial court must determine the active appreciation value of the businesses, if any, and then provide an equitable distribution to the parties as marital property.

**{¶64}** We jointly consider Husband's fifth assigned error and Wife's first assigned error, in which both parties argue and agree that the trial court's division of real estate was an abuse of discretion:

> [Husband 5.] The trial court committed prejudicial error and abused its discretion in the division of the parcels of real estate between the parties.

> [Wife 1.] The trial court committed an error of law by awarding the same parcel of real estate to both parties.

**{¶65}** The trial court divided between the parties 36 parcels of real estate. Many of these parcels that are contiguous to one another (e.g., one parcel holds a building and the adjoining parcel holds the parking lot) were split between the parties without reason or explanation. One parcel was distributed to both parties; one parcel was not distributed to either party. The result of this division is that neither party will be able to put the real estate to its best use, the value of the properties will be depreciated, and Husband will be unable to continue doing business at the real estate he was awarded. We conclude that

21

Case No. 2021-T-0020

the trial court's division and distribution of these properties was arbitrary and unreasonable and, therefore, an abuse of discretion.

{¶66} Husband's fifth assigned error and Wife's first assigned error are well taken. On remand, the trial court shall reevaluate the equitable distribution of all marital assets, taking into consideration the best contiguous use and value of these parcels of real estate.

{¶67} Wife's fourth assignment of error states:

> [4.] The trial court erred by making, without explanation, an unequal division of property.

{¶68} Wife argues that the trial court erred by awarding to Husband over $5,000.00 more of marital property without supporting findings of fact as to why this was equitable. Based on our holding in the previous assigned error, resulting in a remand for a new distribution of marital assets, we conclude this assigned error is moot.

{¶69} Husband's sixth assigned error states:

> The trial court erred and abused its discretion in failing to address and adjust the marital division of property to require Appellee to contribute one-half of the joint marital debt incurred and paid by Appellant during the pendency of the divorce proceedings and also after the date of the de facto termination of the marriage set by the trial court.

{¶70} During the pendency of the divorce proceedings, Husband was required to pay certain joint obligations of the parties, including mortgage payments, maintenance, taxes, insurance, and utilities on the marital property occupied and ultimately awarded to Wife. Husband contends it was inequitable and an abuse of discretion for the trial court to fail to address and adjust the marital division of property to require Wife to contribute one-half of these joint obligations.

22

Case No. 2021-T-0020

**{¶71}** "A trial court is within its discretion to 'award a credit to the party who uses his or her own separate funds to make mortgage or other loan payments while the divorce is pending. Such a request will be denied however, if the payments were made with marital funds.'" *Shoenfelt v. Shoenfelt*, 3d Dist. Shelby No. 17-14-13, 2015-Ohio-225, ¶ 44, quoting *Shattuck v. Shattuck*, 153 Ohio App.3d 622, 2003-Ohio-4230, 795 N.E.2d 135, 25 (7th Dist.), citing Turner, *Equitable Distribution of Property*, Section 6.25, 441 (2d Ed.1994). "Further, a trial court may also deny a claim for reimbursement for mortgage payments when the spouse retains exclusive use and possession of the marital home." *Shoenfelt* at ¶ 44, citing *Wu v. Li*, 12th Dist. Butler No. CA-2012-04-091, 2013-Ohio-527, ¶ 13. "Since the spouse receives the benefit from paying down the mortgage and retaining the marital home, he or she should 'bear more financial responsibility for the house during the pendency of the divorce * * *.'" *Shoenfelt* at ¶ 44, quoting *Bass v. Bass*, 2d Dist. Montgomery No. 25922, 2014-Ohio-2667, ¶ 16; *see also Stacy v. Stacy*, 11th Dist. Ashtabula No. 2004-A-0076, 2005-Ohio-5289, ¶ 36 (trial court did not abuse its discretion in failing to credit wife with mortgage payments made during parties' separation since wife had benefit of living in house and husband did not); *Patridge v. Matthews*, 12th Dist. Brown No. CA2000-04-007, 2001 WL 171011, *4 (Feb. 20, 2001) (trial court did not abuse its discretion in failing to credit husband with mortgage payments made after the parties' separation when he continued to live in the house).

**{¶72}** Husband was obligated to make these payments while Wife continued to live in the marital home. He does not contend that he paid these obligations with separate property, but he did continue to make these payments even after the de facto termination

23

date of the marriage. We conclude that it was an abuse of discretion for the trial court not to consider and address the issue in the final decree of divorce.

{¶73} Husband's sixth assigned error is well taken and shall be addressed by the trial court on remand.

{¶74} Wife's sixth assigned error states:

[6.] The trial court erred by providing a full credit to Mr. Fordeley for the Chase credit card obligation.

{¶75} We agree the final divorce decree contains an inconsistency in this regard. The trial court found the amount owed on the Chase credit card was $8,352.17 and awarded Husband a credit of one-half that amount. However, in the division of assets and liabilities, the trial court listed a full credit to Husband for the amount owed. Accordingly, Wife's sixth assigned error has merit and shall be addressed by the trial court on remand.

{¶76} Wife's seventh assigned error states:

[7.] The trial court erred by making contradictory provisions as to the Discover Card obligation.

{¶77} Evidence was provided to the trial court as to two Discover Card obligations. Wife provided evidence of a Discover Card with an outstanding balance of $10,000.00. The trial court ordered Wife to pay and hold Husband harmless on this debt. Husband provided evidence of a Discover Card with an outstanding balance of $19,893.08. The trial court ordered Husband to pay and hold Wife harmless on this debt. We discern no contradiction in these provisions. Wife's seventh assigned error is without merit.

{¶78} Wife's remaining assigned errors state:

24

Case No. 2021-T-0020

[3.] The trial court's judgment that Mrs. Fordeley solely pay the Discover Card, Visa, and Kohl's debt is error.

[5.] The trial court erred by failing to account for the real estate sold in violation of the mutual restraining order.

[8.] The trial court erred in ruling that the debts owed to Rose Skravis and Barb Dirufalla are the sole obligation of Mrs. Fordeley.

[9.] The trial court erred by failing to compensate Mrs. Fordeley for the dissipation of marital assets by her husband for the amount he spent on attorney fees.

{¶79} "An appellant 'bears the burden of affirmatively demonstrating error on appeal. It is not the obligation of an appellate court to search for authority to support an appellant's argument as to an alleged error.'" *State ex rel. Ames v. Portage Cty. Bd. of Commrs.,* 11th Dist. Portage No. 2019-P-0015, 2019-Ohio-3729, 144 N.E.3d 1010, ¶ 85, quoting *State v. Herron*, 11th Dist. Lake No. 2009-L-119, et al., 2010-Ohio-2050, ¶ 16.

{¶80} Wife has not affirmatively demonstrated under these assignments of error that the trial court abused its discretion. Accordingly, Wife's third, fifth, eighth, and ninth assigned errors are without merit.

{¶81} The judgment of the Trumbull County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded for further proceedings consistent with this court's opinion on Husband's second, fifth, and sixth assigned errors and Wife's first and sixth assigned errors.

JOHN J. EKLUND, P.J.,

MARY JANE TRAPP, J.,

concur.

25

Case No. 2021-T-0020